HEWITT v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 56751. Submitted December 7, 1982, at Detroit.—Decided
February 23, 1983.

Dorothy Hewitt, administratrix of the estate of David R. Hewitt,
deceased, brought a wrongful death action in the Oakland
Circuit Court against the Grand Trunk Western Railroad Com-
pany. Plaintiff's theory of the case was that the decedent was
killed when he was knocked into the defendant's train when
struck by a broken metal band which defendant had negli-
gently allowed to extend over the edge of its train. Defendant's
theory of the case was that the decedent jumped into the train;
in effect, taking his own life. The jury returned a verdict of no
cause of action in favor of the defendant and the trial court,
Robert C. Anderson, J., entered a judgment to that effect.
Plaintiff appeals, alleging error in the trial court's admission
into evidence of an accident report prepared by a police officer
investigating the accident. The report was admitted as an
exception to the hearsay rule, although the court did not
specify which exception was applicable. *Held:*

    1. The police report constituted multiple hearsay since it was

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 493, 497.
    32B Am Jur 2d, Federal Rules of Evidence § 196.
[2] 32B Am Jur 2d, Federal Rules of Evidence § 271.
[3] 32B Am Jur 2d, Federal Rules of Evidence § 226.
    When is hearsay a "present sense impression" admissible under
    Rules 803(1) of the Federal Rules of Evidence. 60 ALR Fed 524.
[4] 29 Am Jur 2d, Evidence § 708.
    32B Am Jur 2d, Federal Rules of Evidence § 227.
[5] 29 Am Jur 2d, Evidence § 496.
[6-8] 29 Am Jur 2d, Evidence §§ 876, 877.
    32B Am Jur 2d, Federal Rules of Evidence § 233.
    Refreshment of recollection by use of memoranda or other writings.
    82 ALR2d 473.
[9] 5 Am Jur 2d, Appeal and Error § 545.
[10, 11] 30 Am Jur 2d, Evidence §§ 931, 934.
    32B Am Jur 2d, Federal Rules of Evidence § 242.
    Admissibility in state court proceedings of policy reports as busi-
    ness records. 77 ALR3d 115.
[12] 5 Am Jur 2d, Appeal and Error § 797.

based on the officer's hearsay notes which in turn were based on the hearsay statements of the witnesses. In order for such hearsay within hearsay to be admissible, each part of the combined statement must conform with an exception to the hearsay rule. The witnesses' statements did not fall within any of the exceptions to the hearsay rule. Therefore, the trial court erred in allowing the police officer's report in evidence. In addition, the report itself was also inadmissible hearsay not falling within any of the hearsay exceptions.

2. The admission of the police officer's report cannot be considered harmless error. It cannot be concluded that the other evidence which was properly introduced was so over-whelmingly supportive of defendant's position that the erroneous admission of the accident report was rendered harmless.

Reversed and remanded.

1. EVIDENCE — HEARSAY — RULES OF EVIDENCE.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted (MRE 801[c]).

2. EVIDENCE — HEARSAY — MULTIPLE HEARSAY.

Hearsay included within hearsay is inadmissible unless each part of a combined statement falls within an exception to the hearsay rule (MRE 805).

3. EVIDENCE — HEARSAY — PRESENT SENSE IMPRESSIONS — RULES OF EVIDENCE.

The scope of the hearsay exception pertaining to present sense impression is limited to statements made while describing the event or condition or instantly thereafter; underlying this exception is the assumption that statements of perception substantially contemporaneous with an event are highly trust-worthy because: (1) the statement being simultaneous with the event there is no memory problem, (2) there is little or no time for calculated misstatement, and (3) the statement is usually made to one who had equal opportunity to observe and check misstatements (MRE 803[1]).

4. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A statement must meet three criteria to come within the excited utterance exception to the hearsay rule: (1) it must arise out of a startling occasion, (2) it must be made before there has been time to contrive and misrepresent, and (3) it must relate to the circumstances of the startling event; in order to come within

this exception there must be a startling event or condition and a statement made by a person who was under the stress of excitement both while perceiving the event and when the statement was made (MRE 803[2]).

5. EVIDENCE — HEARSAY — EXCEPTIONS — BURDEN OF PROOF.

It is incumbent upon the proponent of hearsay evidence to establish the foundational elements of a hearsay exception for such evidence.

6. EVIDENCE — HEARSAY — RECORDED RECOLLECTION — RULES OF EVIDENCE.

A writing otherwise objectionable as hearsay, to be admitted in evidence as a past recollection recorded, must have a proper foundation which consists of: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness's memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence, and (e) a showing that the substance of the proffered writing is otherwise admissible (MRE 803[5]).

7. EVIDENCE — HEARSAY — RECORDED RECOLLECTION — RULES OF EVIDENCE.

The declarant must examine a report sought to be admitted in evidence under the recorded recollection exception to the hearsay rule and indicate that it accurately reflects the events that transpired where the author of the report is not the declarant of the pertinent statement (MRE 803[5]).

8. EVIDENCE — HEARSAY — POLICE REPORTS — RECORDED RECOLLECTION — RULES OF EVIDENCE.

A report of a police officer prepared at the end of a day's work must be accompanied by the fragmentary notes from which the report was prepared if the report is to be allowed in evidence under the recorded recollection exception to the hearsay rule; such rule applies in both civil and criminal cases (MRE 803[5]).

9. APPEAL — PRESERVING ISSUES.

Failure to raise an issue in the trial court waives the issue on appeal.

10. EVIDENCE — HEARSAY — BUSINESS RECORDS — POLICE ACCIDENT REPORTS — RULES OF EVIDENCE.

An accident report prepared by a police officer incorporating

information obtained from a witness may not meet the foundational requirement for admission into evidence under the hearsay exception pertaining to records of regularly conducted activity requiring that the declarants or informants must be acting in the regular course of their business when making the statements since the officer may qualify as acting in the regular course of business but the witness does not (MRE 803[6]).

11. Evidence — Hearsay — Public Records and Reports —.Police Accident Reports — Rules of Evidence.

An accident report prepared by a police officer incorporating information obtained from a witness may not be admissible in evidence under the *public records and reports exception to the* hearsay rule where such accident report is in no way related to the activities per se of the police agency, where the information contained in the report can in no way be said to have included an activity as to which there was a duty to report, or where the reporting officer had no firsthand knowledge of the facts contained therein (MRE 803[8]).

12. Evidence — Appeal and Error — Harmless Error.

The erroneous admission of evidence supporting a defendant's position by a trial court will not be considered harmless error where the Court of Appeals cannot conclude that the other evidence that was properly admitted was so overwhelmingly supportive of the defendant's position that the erroneous admission of the evidence was rendered harmless. ·

*Zeff & Zeff* (by *A. Robert Zeff*) and *Gromek, Bendure & Thomas* (by *James G. Gross*), of counsel, for plaintiff.

*Patterson & Patterson, Whitfield, Manikoff, Ternan & White* (by *Gerald G. White* and *Robert G. Waddell*), for defendant.

Before: D. C. Riley, P.J., and D. F. Walsh and Wahls, JJ.

· D. C. Riley, P.J. Following a two week jury trial in Oakland County Circuit Court of plaintiff's wrongful death action, the jury returned a verdict

in favor of defendant of no cause of action. Plaintiff appeals as of right.

## I

### FACTS

On January 23, 1972, plaintiff's decedent, David Hewitt, then 55 years old, was at home with plaintiff, to whom he had been married for 35 years. When Mrs. Hewitt left their home to attend a baby shower that afternoon, Mr. Hewitt appeared to be in good spirits. Shortly thereafter, Mr. Hewitt left their Oak Park home and drove to a drug store in Royal Oak. He purchased a newspaper and a few incidentals and chatted for a few minutes with the store owner who was a friend of his. The store owner testified that he noticed nothing unusual about Mr. Hewitt. Mr. Hewitt left the store sometime between 3 and 3:30 p.m. Shortly thereafter, between 3:30 and 4 p.m., Mr. Hewitt was killed when he was struck by a train owned by defendant near the Fifth Street pedestrian crossing in Royal Oak.

Plaintiff alleged that Mr. Hewitt was knocked into the train when he was struck by a broken metal band that defendant had negligently allowed to extend over the edge of the train. The evidence at trial indicated that the band had been used to secure a load of wooden crates on a flatcar near the caboose. Some of the crates had collapsed causing the load to shift, which in turn caused the metal band to break from the added pressure.

Defendant's theory of the case, on the other hand, was that Mr. Hewitt jumped into the train, in effect, taking his own life. The only known eyewitnesses were two boys, 14 or 15 years old. Although neither eyewitness was available at trial,

one had been deposed and his deposition was admitted into evidence and read to the jury. The deposition revealed that as the boys were throwing snowballs and watching the train go by, they noticed Mr. Hewitt standing approximately six feet from the passing train and about ten feet south of the pedestrian crossing. Mr. Hewitt's car was parked on the other side of the tracks. The deponent's attention was next drawn to Mr. Hewitt when the other witness exclaimed, "Hey, look at that guy. He just got hit by the train". The deponent stated emphatically that he couldn't tell whether Mr. Hewitt had either walked or jumped into the train, as Mr. Hewitt was already in motion and was being struck by the caboose by the time he looked over.

Although it would appear that the other eyewitness was not deposed, he made a statement to a police officer who was investigating the accident. The officer testified that, although he had absolutely no recollection of the interview with the witness, he made notes of the interview from which he subsequently prepared an accident report, which the officer admitted on voir dire was not a verbatim account of the witnesses' statements. This accident report stated that "as the caboose was approaching the crossing, the compatent [sic] jumped into the side of the train".

At the conclusion of the trial, the case was submitted to the jury pursuant to a special verdict form. The jury found that the defendant was negligent but that its negligence was not the proximate cause of plaintiff's injuries. Plaintiff's sole contention on appeal is that the officer's accident report was admitted in violation of the hearsay rule, MRE 802.

## II

### Trial Court Ruling

Defense counsel offered the accident report as an exception to the hearsay rule pursuant to MRE 803(1), present sense impression; MRE 803(2), excited utterance; and MRE 803(5), recorded recollection. In ruling that the report was admissible, the trial court did not specify which exception was applicable, rather the court merely stated that:

"* * * [the witnesses' statements] were made within a reasonable length of time in this particular matter and I think it comes within the exception to the hearsay rule and I think the officer's, the way he recorded the particular matter, would not allow me to strike or not allow it into evidence at this time."

## III

### The Hearsay Rule

There is no question that the report in question was hearsay. In fact, the report constituted multiple hearsay or "hearsay within hearsay". MRE 801(c) defines "hearsay" as:

"[A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

In the case at bar, the report was an out of court statement, MRE 801(a), offered in evidence to prove the truth of the matter asserted, *i.e.,* that Mr. Hewitt jumped into the train. Similarly, the report itself was based on the officer's hearsay notes which in turn were based on the hearsay statements of the witnesses. In order for such

hearsay within hearsay to be admissible, each part of the combined statement must conform with an exception to the hearsay rule. MRE 805. *Henson v Veterans Cab Co of Flint,* 384 Mich 486, 495; 185 NW2d 383 (1971); *People v Kirtdoll,* 391 Mich 370, 395-396, fn 15; 217 NW2d 37; 69 ALR3d 1 (1974). Our analysis then necessarily begins with an examination of the witnesses' statements to the investigating officer at the scene of the accident. Inasmuch as the witnesses' statements to the investigating officer formed the basis from which the report in question was ultimately derived, we must determine whether their statements fell within one of the enumerated exceptions to the hearsay rule.

## IV

### Hearsay Exceptions

### A

### *Present Sense Impression*

MRE 803 provides in part as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

MRE 803(1) is identical to FRE 803(1). The Federal Advisory Committee Note to FRE 803 states:

"The underlying theory of Exception (1) is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepre-

sentation. * * * Morgan, Basic Problems of Evidence 340-341 (1962)."

In *United States v Narciso,* 446 F Supp 252, 288 (ED Mich, 1977), the court discussed the "present sense impression" exception:

"Underlying Rule 803(1) is the assumption that statements of perception *substantially contemporaneous* with an event are highly trustworthy because: (1) the statement being simultaneous with the event there is no memory problem; (2) there is little or no time for calculated misstatement; and (3) the statement is usually made to one who had equal opportunity to observe and check misstatements." (Quoting Weinstein and Berger, Weinstein's Evidence, ¶ 803(1)[01].) (Emphasis added.)

In the case at bar, as in *Narciso, supra,* all of these requirements are lacking. The statements were not made while the witnesses saw Mr. Hewitt being struck by the train or even "immediately thereafter". While the record is not clear, it is apparent that at least several, and possibly as many as 30, minutes passed before the officer took the witnesses' statements. Moreover, the reporting officer could in no way corroborate the truth of the witnesses' statements since he was not present at the scene of the accident until after the fact. While our conclusion in this regard could perhaps be viewed as imposing an unduly restrictive interpretation of the phrase "immediately thereafter", a more expansive interpretation would only serve to further blur the distinction between the "present sense impression" exception and the "excited utterance" exception which we have concluded, as discussed below, is also inapplicable. The purpose and intent of subrule 803(1) can be served most effectively by limiting the scope of that exception

to statements made while describing the event or condition or instantly thereafter.

## B

### Excited Utterance

Defendant also urged the trial court to admit the report as a hearsay exception pursuant to MRE 803(2), which provides as follows:

"(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The rationale underlying this exception is "the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication". McCormick, Evidence (2d ed), § 297, p 704. Stated another way, it is the emotional shock produced by the startling event which "stills the reflective faculties and removes their control" that is the gravemen of the exception. *People v Ivory Thomas,* 14 Mich App 642, 649; 165 NW2d 879 (1968) (LEVIN, J., *concurring),* quoting 6 Wigmore on Evidence (3d ed), § 1747, p 135.

Although the elements of the excited utterance exception to the hearsay rule have been variously defined, the definition set forth in *People v Gee,* 406 Mich 279; 278 NW2d 304 (1979), has gained general acceptance:

"To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circum-

stances of the startling occasion." (Footnote omitted.) *Gee,* p 282.

However the elements of this exception are defined, it is clear that the statement must have been made while the declarant was still in a state of nervous excitement. *People v Carson,* 87 Mich App 163; 274 NW2d 3 (1978). As the court stated in *Narciso, supra,* p 286:

"In order to come within the rule there must be a startling event or condition and a statement *made by a person who was under the stress of excitement* both while perceiving the event and when the statement was made." (Emphasis added.)

As the proponent of the evidence in question, it was incumbent upon defendant to establish the foundational elements of this hearsay exception. *Sanborn v Income Guaranty Co,* 244 Mich 99, 107; 221 NW 162 (1928). In the case at bar, the reporting officer was questioned on voir dire with regard to the circumstances surrounding the witnesses' statements. The officer testified that he was unable to recall anything remarkable about the witnesses' demeanor when they made their statements to him. In the absence of some evidence that the witnesses were excited or under particular nervous stress when they made the alleged statements, we cannot conclude that the statements in question fell within the excited utterance exception. *Narciso, supra,* p 288. Further, we find that none of the other exceptions to the hearsay rule apply to the witnesses' statements.

As discussed above, under MRE 805, hearsay included within hearsay is inadmissible unless each part of a combined statement falls within an exception to the hearsay rule. Inasmuch as we

have concluded that the report in question contained inadmissible hearsay statements, we need go no further to hold that the trial court erred in allowing its admission into evidence. Nevertheless, we are persuaded that the report itself, aside from the statements contained therein, was also inadmissible hearsay.

## C

### Recorded Recollection

The recorded recollection exception to the hearsay rule, MRE 803(5), provides as follows:

"A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

It is generally accepted that there are four elements that must be established as a prerequisite to the admission of a record pursuant to this exception:

"(1) *the witness must have had firsthand knowledge of the event,* (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum." (Emphasis added; footnote omitted.) McCormick, Evidence (2d ed), § 299, p 712.

The quoted language is consistent with prior decisions of Michigan courts. In *Jaxon v Detroit,* 379 Mich 405, 413; 151 NW2d 813 (1967), the Court held that:

"To qualify a writing otherwise objectionable as hearsay to be admitted in evidence as a past recollection recorded, a proper foundation must be laid. That foundation should consist in the following: (a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum *made by the witness from personal observation,* (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence and, (e) a showing that the substance of the proffered writing is otherwise admissible." (Emphasis added.)

Although *Jaxon, supra,* predates the adoption of the Michigan Rules of Evidence, MRE 803(5) is generally consistent with prior Michigan law. See Michigan Court Rules Annotated, Evidence Rules (1979), MRE 803, Committee Note, Exception 803(5), p 675. Moreover, this Court has subsequently adopted the foundational elements listed by the *Jaxon* Court as being the proper test for determining the admissibility of a document under MRE 803(5). *Echols v Rule,* 105 Mich App 405, 410-411; 306 NW2d 530 (1981).

We agree with the plaintiff that the defendant failed to establish all of these foundational elements. First, defendant failed to give the officer an opportunity to refresh his recollection by reviewing the report. More importantly, however, there was no showing that the report was based on the officer's personal observations. In cases such as the one at bar, where the author of a report or memo-

randum is not the declarant of the pertinent statement, the declarant must examine the report and indicate that it accurately reflects the events that transpired. *People v Kubasiak,* 98 Mich App 529; 296 NW2d 298 (1980). This procedure was not followed in the present case.

Finally, and most importantly, the Supreme Court has held that where a report such as the one involved in the case at bar, which is based upon fragmentary notes, is offered into evidence as an exception to the hearsay rule pursuant to MRE 803(5), the report may not be admitted unless it is accompanied by the notes:

"We conclude that if the reports of the officers prepared at the end of a day's work are to be allowed in evidence, they must be accompanied by the fragmentary notes from which each report was prepared. Only in this fashion will it be possible for counsel for a defendant to proceed with a meaningful cross-examination of the officer." *People v Rosborough,* 387 Mich 183, 194-195; 195 NW2d 255 (1972).

This Court has subsequently held that the rule of *Rosborough, supra,* is applicable to civil as well as criminal cases. *Sponick v Detroit Police Dep't,* 49 Mich App 162; 211 NW2d 674 (1973). Thus, we conclude that the report in question was not admissible as the officer's recorded recollection.

## D

### Records of Regularly Conducted Activities

Defendant contends for the first time on appeal that the report was admissible as an exception to the hearsay rule pursuant to MRE 803(6), records of regularly conducted activity. It is well settled that failure to raise an issue in the trial court

waives the issue on appeal. *Shelby Twp Fire Dep't v Shields,* 115 Mich App 98, 104; 320 NW2d 306 (1982); *Hudson v Maher,* 55 Mich App 90, 93; 222 NW2d 47 (1974). However, as the issue may arise on remand, we briefly address it here.

MRE 803(6) provides:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

McCormick's treatise on the law of evidence explains the rationale behind this exception as follows:

"The exception is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the recordkeeper in habits of precision, and because in actual experience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind." McCormick, Evidence (2d ed), § 306, p 720.

A brief reading of the Federal Advisory Committee Note to FRE 803(6) sufficiently demonstrates why this rationale is inapplicable to the case at bar:

"Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant funrishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business'. If, *however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself,* and the fact that it may be recorded with scrupulous accuracy is of no avail. *An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not.* The leading case, *Johnson v Lutz,* 253 NY 124; 170 NE 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decision. *Gencarella v Fyfe,* 171 F2d 419 (CA 1, 1948); *Gordon v Robinson,* 210 F2d 192 (CA 3, 1954); *Standard Oil Co of California v Moore,* 251 F2d 188, 214 (CA 9, 1957), *cert den* 356 US 975; 78 S Ct 1139; 2 L Ed 2d 1148 (1958); *Yates v Bair Transport, Inc,* 249 F Supp 681 (SD NY, 1965); Anno: 69 ALR2d 1148. *Cf. Hawkins v Gorea Motor Express, Inc,* 360 F2d 933 (CA 2, 1966). *Contra,* 5 Wigmore, § 1530a, fn 1, pp 391-392." (Emphasis added.) Michigan Court Rules Annotated, Evidence Rules (1979), MRE 803, Federal Advisory Committee Note, p 683.

This principle discussed in the language quoted above is reflected in Michigan case law. In *Moncrief v Detroit,* 398 Mich 181, 189-190; 247 NW2d 783 (1976), the Supreme Court rejected the suggestion that a police accident report was admissible into evidence under the business records exception

to the hearsay rule. In so holding, the Court discussed some "first principles":

"Because police reports are generally offered to prove the truth of their contents, their use as evidence at trial constitutes hearsay. Therefore, before they may be admitted into evidence, read into the record, or read to the fact finder by a witness in the course of his testimony, the proponent of the evidence must lay a foundation which establishes an exception to the hearsay rule.

"The police report is a writing. It could be admitted into evidence as an exhibit if the proponent can show that it meets the requirements of the business records exception. However, because of the 'nature' of police business and the circumstances under which such reports are usually made, the possibility of police reports so qualifying is unlikely." (Citing, *Palmer v Hoffman*, 318 US 109; 63 S Ct 477; 87 L Ed 645 [1943]; Mc-Cormick, Evidence [2d ed], § 308.)

In this case, we conclude that the accident report was not admissible as a "business record" because the primary foundational requirement that the declarants or informants must be acting in the regular course of *their* business when making the statements was lacking. This foundational element is critical as the business records exception is premised on the assumption that the statements of a declarant acting in the regular course of his or her business are inherently trustworthy.

E

*Public Records and Reports*

Finally, defendant contends, again for the first time on appeal, that the accident report was admissible as a "public record or report", MRE 803(8). This issue has also been waived for purposes of this appeal, *Shelby Twp Fire Dep't, supra.*

Nevertheless, we briefly discuss why we believe the accident report was not admissible under the public records and reports exception.

MRE 803(8) provides:

"(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCL 257.624; MSA 9.2324."

We note that the principles of double or multiple hearsay discussed above are equally applicable to this exception. McCormick's treatise on the law of evidence explains the purpose, scope and justification for this exception:

"The special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed * * *.

"A special need for this category of hearsay is found in the inconvenience of requiring public officials to appear in court and testify concerning the subject matter of their statements. Not only would this disrupt the administration of public affairs, but it almost certainly would create a class of official witnesses. Moreover, given the volume of business in public officers, the official written statement will usually be more reliable than the official's present memory." McCormick, Evidence (2d ed), § 315, pp 735-736.

Subrule 803(8)(A) is inapplicable to the case at bar as the accident report is in no way related to the activities per se of the police agency. *Cf., Joba Construction Co, Inc v Burns & Roe, Inc,* 121 Mich

App 615; 329 NW2d 760 (1982) (transcript of a meeting of a city agency held to have set forth the activities of that agency). MRE 803(8)(B) is also inapplicable as the information contained in the report can in no way be said to have included an activity as to which there was a duty to report. *Gilliland v Baldwin-Lima-Hamilton Corp,* 52 Mich App 489; 218 NW2d 63 (1974).

Moreover, we find that the report in question did not fall within the public records and reports exception as the reporting officer had no firsthand knowledge of the facts contained therein. *Gilliland, supra.*

## V

### PREJUDICE

We conclude by noting that there is no question that the admission of the report in question cannot be considered harmless error. As noted above, defendant's theory of the case was that Mr. Hewitt took his own life by jumping into the train. During both opening statement and closing argument, defense counsel repeatedly stated that the witnesses observed Mr. Hewitt "jump" into the train. Indeed, a review of the record indicates that during closing argument defense counsel stated to the jury no less than 11 times that the witnesses observed Mr. Hewitt jump into the train. The only evidence supporting this position was the inherently untrustworthy accident report which was admitted into evidence in violation of the hearsay rule, MRE 802. The jury's finding that the defendant's negligence was not the proximate cause of the decedent's death leads us to the inescapable conclusion that they agreed with defendant's theory of the case.

We cannot conclude that the other evidence that was properly introduced in accordance with the rules of evidence was so overwhelmingly supportive of defendant's position that the erroneous admission of the accident report was rendered harmless.

Reversed and remanded for a new trial.

Costs to appellant.