HOLDEN v FORD MOTOR COMPANY

Docket No. 118813. Submitted February 22, 1990, at Detroit. Decided August 23, 1990. Leave to appeal applied for.

Carl Holden died following an incident where he ceased to have a pulse or respirations while seated at his desk in the office he had as a food service supervisor for Ford Motor Company. Emiline Holden, widow of the deceased, sought workers' disability compensation benefits, eventually claiming that the deceased's hypertensive and arteriosclerotic cardiovascular disease had been aggravated by the mental distress caused by his employment and that his death had been precipitated by having walked up some stairs in the course of his employment shortly before his death. The employer disputed the claim, alleging that the death was caused by hypertensive and arteriosclerotic disease which was unrelated to the deceased's employment. A hearing was held before a workers' compensation magistrate. The magistrate permitted a fellow employee to testify that the deceased had said shortly before his cardiopulmonary episode that he had just taken the stairs and that he was not feeling well. One of plaintiff's expert witnesses, a board certified pathologist, testified the deceased suffered from hypertensive and arteriosclerotic disease and showed evidence of old and recent myocardial damage. That expert opined on the basis of his post-mortem examination that the deceased's heart disease was aggravated by the stress of the job and that the stress precipitated the myocardial infarction which resulted in the deceased's death. Plaintiff's other expert opined that the stress of the deceased's job accelerated his arteriosclerotic condition and that his walking up the stairs at work had led to a myocardial infarction which caused the deceased's death. Defendant's expert, board certified in internal medicine and specializing in cardiology, testified that he examined the slides prepared by the pathologist and found no evidence of myocardial infarction, testified that stress does not cause or accelerate

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 527, 537, 616, 631, 634, 635.

Comment Note: Hearsay evidence in proceedings before state administrative agencies. 36 ALR3d 12.

arteriosclerosis, and opined that the deceased's work did not cause or accelerate his arteriosclerosis. The magistrate found that there was no evidence that the deceased had experienced mental distress before he died, found that the testimony relating to any stair climbing was sketchy, found that the testimony that the deceased's death was aggravated or accelerated by job stress was without evidentiary support, rejected the testimony concerning myocardial infarction and, accordingly, denied plaintiff's claim for benefits. Plaintiff appealed, claiming that the magistrate's decision was not supported by competent, material and substantial evidence on the whole record. The Workers' Compensation Appellate Commission reversed, holding that the magistrate's findings were erroneous with respect to the existence of a myocardial infarction and that the magistrate was in error in not finding that death resulted from a myocardial infarction caused by climbing stairs. Defendant appealed by leave granted. The Michigan Attorney General, Michigan Manufacturers Association, Michigan Self-Insurers Association and Michigan Trial Lawyers Association were permitted to file briefs amici curiae.

The Court of Appeals *held:*

1. The findings of fact by a workers' compensation magistrate are conclusive if supported by competent, material and substantial evidence on the whole record. The function of the Court of Appeals in reviewing a determination by the appellate commission is to determine whether the appellate commission properly applied that standard to the findings of fact by the magistrate.

2. There was competent, material and substantial evidence on the whole record to support the magistrate's finding that it had not been established that the deceased died as a result of a myocardial infarction and that the stair-climbing incident and its relationship to the deceased's death was speculative in nature. Accordingly, the appellate commission erred in setting aside the magistrate's findings and determination.

Reversed.

1. WORKERS' COMPENSATION — FINDINGS OF FACT — APPELLATE COM-
     MISSION — STANDARD OF REVIEW — APPEAL.

The findings of fact by a workers' compensation magistrate are to be considered conclusive by the Workers' Compensation Appellate Commission if supported by competent, material, and substantial evidence on the whole record; the Court of Appeals reviews the decisions of the appellate commission to determine whether the appellate commission correctly applied that test in its review of the magistrate's findings of fact (MCL 418.861a; MSA 17.237[861a]).

2. EVIDENCE — EXPERT WITNESSES — SUBSTANTIAL EVIDENCE —
   WORKERS' COMPENSATION.

   Expert witness testimony is substantial within the meaning of
   the statutory standard of review to be applied by the Workers'
   Compensation Appellate Commission to findings of fact by
   workers' compensation magistrates if it is offered by a qualified
   expert who has a rational basis for his views, whether or not
   other experts agree (MCL 418.861a; MSA 17.237[861a]).

3. EVIDENCE — HEARSAY — PRESENT SENSE IMPRESSION — WORKERS'
   COMPENSATION.

   Hearsay testimony that an employee indicated that he had just
   walked up stairs is admissible at a workers' compensation
   hearing under the present sense impression exception to the
   hearsay rule (MRE 803[1]).

*Thomas J. Bertino,* and *Daryl Royal,* of Counsel,
for plaintiff.

*John M. Thomas,* and *Conklin, Benham, Ducey,
Listman & Chuhran, P.C.* (by *Martin L. Critchell*),
for defendant.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, and *Richard F. Zapala*
and *Ray W. Cardew, Jr.,* Assistants Attorney General,
for the Attorney General.

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry,* and *Rachelle G. Silberberg*), for the Michigan Manufacturers Association.

*Conklin, Benham, Ducey, Listman & Chuhran,
P.C.* (by *Thomas P. Chuhran* and *Michael J. DePolo*), for the Michigan Self-Insurers' Association.

*Mark Granzotto,* and *Monica Linkner,* and
*Charles P. Burbach,* for the Michigan Trial Lawyers Association.

Before: Reilly, P.J., and Gillis and Cynar, JJ.

Per Curiam. Defendant appeals by leave granted the Workers' Compensation Appellate Commission's order reversing the decision of the magistrate on the basis that his decision was not supported by competent, material, and substantial evidence on the whole record. In our order granting leave to appeal, this Court ordered the parties to address the following questions:

> (1) What is the standard by which the Court of Appeals reviews Workers' Compensation Appellate Commission review of findings of fact made by the magistrate in this case and does it differ, if at all, from the standard by which the Court of Appeals would have reviewed a finding of fact made by the Workers' Compensation Appeal Board? See *Aquilina v General Motors Corp,* 403 Mich 206, 213 [267 NW2d 923] (1978) and §§ 861 and 861a of the Workers' Disability Compensation Act.
>
> (2) Can the Appellate Commission reverse or modify a magistrate's fact-findings which are supported by the testimony of at least one qualified expert who has a rational basis for his views? See *Great Lakes Steel Division of National Steel Corp v Michigan Public Service Comm,* 130 Mich App 470, 481 [344 NW2d 321] (1983); *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116 [223 NW2d 283] (1974).

We now reverse the appellate commission's order and reinstate the magistrate's order.

Plaintiff, decedent's widow, filed a claim for workers' compensation arising from decedent's death, which occurred on July 11, 1986, claiming that continuous job stress caused or aggravated injury to decedent's heart. Defendant disputed the claim, alleging that death was caused by hypertensive and arteriosclerotic cardiovascular disease.

The magistrate heard the following testimony. Decedent's supervisor testified that decedent worked for defendant as a food service supervisor, managing four cafeterias and three dining rooms. Three of the cafeterias and two of the dining rooms were in various locations; the remaining cafeteria and dining room were in the Renaissance Center, where decedent's office was. Decedent was also responsible for managing night banquets, which occurred between one and four times each week, depending on the season, and providing dinners for one-week seminars, which were conducted twice each month, excluding the summer months. Decedent was also responsible for supervising breakfasts, lunches, and dinners on Grand Prix weekends. Decedent also handled union grievances at the first level.

Decedent was a heavy smoker, smoking 2½ packages of cigarettes each day, and had previously been reprimanded for a drinking problem.

Ruth Little, an employee whom decedent supervised, testified that on June 19, 1986, before the Grand Prix weekend, decedent was very upset, short of breath and complained to her for one hour. Little testified that continental breakfasts and lunches five times a week as well as dinner three or four times a week were required for each seminar.

Daniel Micallef, another employee supervised by decedent, testified that decedent did inventory, scheduled employees, and prepared menus. Decedent began ordering food for the Grand Prix two weeks in advance and ordered food for the seminars. Decedent was worried when he had to plan parties for top executives.

Micallef came to work at 6:00 A.M. on July 11, 1986. Decedent came in at 8:30 A.M., although he was normally there at 7:00 or 7:30 A.M. Micallef

was in decedent's office when he came in. Decedent removed his coat and had his sleeves rolled up. Decedent sighed and Micallef asked him what was the matter. Over defendant's hearsay objection, Micallef testified that decedent said that "he had just took [sic] the stairs and he wasn't feeling well. His hands were clammy and his chest hurt." Plaintiff claimed that the statement was admissible pursuant to MRE 803(1)-(3). The magistrate found that this was a statement of then-existing physical condition. MRE 803(3). Micallef testified that decedent did not look well and that his coloring was gray. Micallef suggested that decedent go to the medical department and be checked. Decedent refused and remained seated in his chair. Micallef left.

Micallef returned shortly to ask decedent about an evening party and, while in decedent's office, turned to tell something to his secretary. When Micallef turned back, decedent was lying over his desk, coughing or choking. Decedent was turning red. Micallef instructed the secretary to call the medical department and the Emergency Medical Service. The medical department received an emergency call at 9:07 A.M. Another employee came in and helped Micallef lay decedent on the floor. Micallef discovered that decedent did not have a pulse and attempted cardiopulmonary resuscitation. Decedent resumed congested breathing. Two nurses then came in and took over. One of the nurses stated that decedent was "fibrillating."

Micallef testified that decedent spent one-half of his work time sitting and the other half moving. Decedent worried when important executives would be attending functions.

Micallef also testified that there were more than one set of stairs in the Renaissance Center and

there were two sets of stairs leading outside. Micallef did not ask decedent which set of stairs he had taken; however, Micallef believed that decedent had come in from outside because he had his coat on. Micallef did not know decedent's usual way of entering the building, but believed that decedent normally parked in M lot. Micallef explained that one set of outside stairs ran from the 300 Tower to a motel parking lot; another set ran from the 300 Tower to C lot. There were three flights of steps, each containing "about" ten steps from the motel parking lot. Micallef believed that decedent was talking about those steps. Micallef indicated that decedent would have ridden in an elevator after taking the stairs.

Plaintiff testified that decedent began working for defendant in January or March of 1965. Plaintiff testified that, during the last year decedent worked, he appeared very tired and over-worked. Plaintiff testified that, during the week before the Grand Prix, decedent told her that he could not handle the stress on the job anymore and that his subordinates were "driving him crazy." Decedent stated that the long hours and stress would cause him to have a heart attack. Decedent told plaintiff that he was having "twinges in his chest around his heart."

Decedent's time records show that he worked five hours overtime June 13, 16, and 17, 1986. Decedent also worked 5½ hours overtime on June 18, 3½ hours overtime on June 19, 2 hours overtime on June 20, 9 hours overtime on Saturday, June 21, 11½ hours overtime on Sunday, June 22, and 6 hours overtime on Monday, June 23 and Wednesday, June 25. On Tuesday, June 24, decedent apparently worked his normal hours, from 6:30 A.M. until 3:00 P.M.

On June 26, decedent took two hours vacation

time and on Friday, June 27, decedent took four hours vacation time. Decedent was on vacation from June 28 until July 7. During his vacation, decedent drove to Kentucky and then to North Carolina to play golf. Decedent returned to Kentucky by July 4; on July 5, decedent' son-in-law drove him back to Michigan.

From July 7 until July 9, decedent did not mark his hours and was given credit for his regular hours. On July 10, decedent did not mark any hours worked, but marked six hours as vacation time.

Defendant's medical records show that on July 11, the nurses arrived at 9:10 A.M. and observed decedent lying on his back. Decedent had some gasping respirations, followed by lack of breathing. Mouth-to-mouth resuscitation was given without success. A large amount of mucus was suctioned from decedent's mouth. Decedent's pulse rate was at seventy-six. An oral airway was inserted, and an oxygen mask was attached. No pulse and no breathing occurred, and cardiopulmonary resuscitation was continued. At the hospital, further efforts to revive decedent were unsuccessful.

Before 1986, decedent last went to defendant's medical department on April 1, 1981. Plaintiff testified that decedent last went to his personal physician in 1985, when he had the flu. While plaintiff urged decedent to go to the doctor, he did not.

The magistrate also reviewed three medical depositions. Doctor Werner U. Spitz, one of plaintiff's experts and a board certified pathologist and forensic pathologist, testified that he did an autopsy on decedent, who was fifty-six years old at the time of his death. In the autopsy report, Spitz stated that decedent died of arteriosclerotic and hypertensive heart disease, that decedent's heart was enlarged,

and that the coronary arteries were reduced to one-quarter of their original diameter (i.e., seventy-five percent occluded). Decedent was noted to be "somewhat overweight," weighing 186 pounds and measuring five feet, nine inches tall. In his notes, Spitz indicated that the heart had "no scars, no recent infarct." Spitz listed hypertensive and arteriosclerotic cardiovascular disease as the immediate cause of decedent's death on his death certificate.

In response to plaintiff's attorney's letter, Spitz wrote:

> Mr. Holden suffered of [sic] severe arteriosclerotic and hypertensive heart disease with evidence of old and recent myocardial damage. The wall of the left ventricle of the heart was considerably thickened. The coronary arteries were markedly narrowed, causing inadequate blood supply to the heart muscle.
>
> Based upon the post mortem examination of the body and review of the job description provided to me, there can be no doubt that Mr. Holden's heart disease was aggravated by the stress of his job and this stress precipitated the myocardial infarction which resulted in his death.

Spitz testified that a "myocardial infarction is a condition where the heart muscle dies and becomes scarred over a long period of time brought on by [an] obstruction of a coronary artery, and as part of the arteriosclerotic process." Spitz also testified that the stress of decedent's employment aggravated and accelerated his heart disease. Asked if there were any specific incidents or events which caused or significantly contributed to decedent's heart damage, Spitz opined:

> The general worry that goes on with an in-

creased work load and the completion of the same and specifically the climbing up of the stairs on the last day of his life when he came to the work area complaining of chest pain after he had just run up the flight of stairs all point towards [sic] my previously stated opinion.

Spitz then testified that the cause of decedent's death was a heart attack. Spitz stated that this cause of death was determined after the death certificate was completed because he subsequently examined decedent's heart tissues under a microscope. Spitz conceded that diet and smoking are related to arteriosclerosis.

Doctor Donald Lawrence Newman, plaintiff's other expert and a board certified family practitioner, testified that he was also qualified in the area of internal medical problems. After reviewing decedent's death certificate, autopsy report, and medical history as well as witnesses' statements, Newman responded to plaintiff's attorney's letter as follows:

> Mr. Holden had preexisting arteriosclerotic heart disease. His major risk factors were: hypertension, smoking and significant stress, especially related to the long work hours and management responsibility. These risk factors accelerate the arteriosclerotic process.
>
> There is a suggestion of prior heart problems with the noting of "twinges" in the chest the prior year while serving at the Grand Prix. However, the most significant factor in this occupational history is the climbing of the steps on the day of his demise. This was performed in the course of his occupation and was the significant factor to precipitate the myocardial infarction leading to his death at work, or in transport to the hospital.

Doctor Robert Gerisch, defendant's expert, was

board certified in internal medicine, and specialized in cardiology. Gerisch testified that he examined the slides prepared by Spitz and found no evidence of old or recent myocardial infarction. Gerisch explained that the slides showed no evidence of the type of scarring as would be the case with a myocardial infarction, but, instead, showed little scar formations consistent with the natural aging process. Gerisch also testified that stress does not cause or accelerate arteriosclerosis. Gerisch opined that decedent's work did not cause or accelerate his arteriosclerosis.

The magistrate applied the test outlined by our Supreme Court in *Miklik v Michigan Special Machine Co*, 415 Mich 364; 329 NW2d 713 (1982), under which the factfinder must determine whether there is heart damage and whether that damage can be linked to the employment. The magistrate found that there was no evidence that decedent had experienced mental distress before he died. The magistrate further found:

> A specific finding is made relative to the suggestion in the medical testimony that somehow climbing of stairs on the morning of July 11, 1986 might be related to whatever cardiac episode decedent experienced. The record evidence concerning when such stairs were climbed, their number, and the interval between this activity and decedent's collapse is sketchy indeed. Without such information I found that the medical testimony positing such as a cause of death to be grossly speculative and such is rejected.

Noting that the *Miklik* standard was not met, the magistrate nonetheless went on to find that Spitz' opinion that decedent's death was aggravated and accelerated by emotional and physical job stress was without evidentiary foundation. Moreover, the

magistrate rejected Spitz' testimony concerning a myocardial infarction because he did not indicate the basis for his conclusion in his testimony.

Plaintiff appealed, claiming that the magistrate's decision was not supported by competent, material and substantial evidence on the whole record. Plaintiff claimed that Micallef's testimony concerning stair climbing was sufficient to support a specific cause for decedent's heart attack. Moreover, plaintiff argued that Spitz stated that he came to his conclusion that decedent had had a myocardial infarction after he reviewed slides he had prepared.

The appellate commission held that the magistrate did not make any specific findings as to whether decedent sustained heart damage. The appellate commission did note that the magistrate had rejected Spitz' conclusion that decedent suffered a myocardial infarction because he failed to indicate the basis for his conclusion. The appellate commission stated that the magistrate's finding was erroneous because Spitz testified that his microscopic examination revealed old and recent myocardial infarction. The appellate commission then reviewed the various experts' testimony and concluded that Spitz' testimony was more persuasive than Gerisch's because Spitz was a pathologist and Gerisch was an internist. The appellate commission then concluded that decedent suffered heart damage in the form of a myocardial infarction. The appellate commission noted that, even if it had not concluded that decedent had suffered heart damage in the form of a myocardial infarction, the arrhythmia, testified to by Gerisch, was also heart damage when sudden death resulted.

Turning to the issue of causation, the appellate commission determined that Micallef's testimony

as to what decedent told him when decedent entered his office was admissible pursuant to MRE 803(1) and (3). The appellate commission then held that the magistrate erred in concluding that the stair-climbing incident was not sufficiently proven and that it was not the cause of decedent's death.

In response to defendant's claim that the magistrate had erroneously applied the *Miklik* test rather than the test subsequently required by MCL 418.301(2); MSA 17.237(301)(2), the appellate commission held:

> We agree that pursuant to Section 301, claimants seeking compensation for heart and cardiovascular conditions must establish that their employment contributed to or accelerated the condition in a significant manner. However, where as here, the claimant suffered actual heart damage in the form of a myocardial infarction, it is unnecessary to determine the effect of Section 301(2) on plaintiff's claim.

In so holding, the appellate commission cited *Mulka v Providence Hospital,* 1988 WCACO 27.

The appellate commission then reversed the magistrate's conclusion, holding that there was an increased period of stress before decedent's death, which produced chest pain; that decedent had climbed three flights of stairs, which left him ill; that immediately thereafter decedent suffered a myocardial infarction and died; and that decedent's heart damage was linked to his employment. Therefore, the appellate commission awarded death benefits to plaintiff. We note that one commissioner concurred in the result only.

Defendant then filed for leave to appeal, claiming that the magistrate's decision was supported by substantial evidence and, therefore, the appellate commission erred in reversing it. Moreover,

the defendant argued that the appellate commission erred in concluding that plaintiff did not have to prove that decedent's employment significantly aggravated his arteriosclerosis. As noted above, we granted leave to appeal and ordered the parties to address two questions.

Const 1963, art 6, § 28 provides in part:

Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

MCL 418.861; MSA 17.237(861), setting forth this Court's standard of review of Workers' Compensation Appeal Board decisions, provides:

The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board, if application is made by the aggrieved party within 30 days after such order by any method permissible under the rules of the courts of the laws of this state.

MCL 418.861a(14); MSA 17.237(861a)(14), setting forth this Court's standard of review of Workers' Compensation Appellate Commission decisions, provides:

The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules.

While the language in these sections is virtually identical, the functions of the appeal board and the appellate commission are different. See generally *Civil Service Comm v Dep't of Labor,* 424 Mich 571, 576-587; 384 NW2d 728 (1986), modified 425 Mich 1201 (1986).

Under the Workers' Disability Compensation Act of 1969, the hearing referee heard disputes arising from the act. MCL 418.847, 418.851; MSA 17.237(847), 17.237(851). The referees were expected only to state their decision in conclusory terms and ordinarily did so by filling in the blank spaces on a one-page printed-form order. *Civil Service Comm, supra,* p 581. On appeal, the appeal board reviewed the records and the order. The appeal board could hear the parties and take additional evidence if desired. MCL 418.859; MSA 17.237(859). The appeal board then announced its findings of fact and conclusions of law in written opinions. In *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135; 274 NW2d 411 (1979), our Supreme Court held that the appeal board was required to review the referee's decision de novo and that its primary function was finding the controlling facts. The Court also held that the constitution and the statute granted finality to the appeal board's findings of fact, not the referee's. *Id.* Hence, the appellate courts reviewed the appeal board's decisions by (1) reviewing questions of law, (2) determining whether there was any fraud associated with the findings of fact made by the board and (3) determining whether there was any competent evidence in the record to support the findings of fact made by the board. *Aquilina, supra,* p 213.

1985 PA 103 substantially revised the Workers' Disability Compensation Act of 1969. In addition to their written opinions, magistrates were re-

quired to file a concise written opinion stating findings of fact as well as conclusions of law. MCL 418.847(2); MSA 17.237(847)(2). Moreover, the appellate commission was established in lieu of the appeal board.

MCL 418.861a; MSA 17.237(861a) provides:

> (3) Beginning October 1, 1986 findings of fact made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion.
>
> (4) As used in . . . (3) "whole record" means the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination.
>
> *   *   *
>
> (8) A party filing a claim for review under section 859a shall specify to the commission those portions of the record that support that party's claim and any party opposing such claim shall specify those portions of the record that support that party's position.
>
> *   *   *
>
> (10) The commission or panel of the commission, [sic] may adopt, in whole or in part, the order and opinion of the worker's compensation magistrate as the order and opinion of the commission.
>
> (11) The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested be reviewed.
>
> (12) The commission or a panel of the commission may remand a matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review.

(13) A review of the evidence pursuant to this section shall include both a qualitative and quantitative analysis of that evidence and ensure a full, thorough, and fair review thereof.

In essence, 1985 PA 103 was intended to make the magistrate the factfinder and eliminate de novo review by the appellate commission. Instead, the appellate commission was to review the magistrate's decision to determine if it was supported by competent, material and substantial evidence on the whole record. The statutory language parallels the language discussed in *Michigan Employment Relations Comm, supra.* By mandating that the appellate commission employ this standard of review, the Legislature sought to reduce the number of appeals filed with the appellate commission and, thereby, prevent the backlog in appeals which had occurred in the appeal board as a result of the prior standard of review. *Civil Service Comm, supra,* pp 584-585.

Given the different functions performed by the appeal board and the appellate commission, we believe that the "acting within its powers" language in MCL 418.861a(14); MSA 17.237(861a)(14) becomes critical. Therefore, we conclude that reviewing courts must determine whether the appellate commission correctly applied the competent, material, and substantial evidence on the whole record test when it reviewed the magistrate's findings of fact.

We now turn to the second issue we directed the parties to brief. In *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 126-127; 223 NW2d 283 (1974), our Supreme Court noted that a factfinder's determinations as to credibility when confronted with conflicting testimony of a subjective nature should

be considered along with the consistency and inherent probability of that testimony in deciding whether his findings of fact are supported by substantial evidence. In *Great Lakes Steel Division of National Steel Corp v Michigan Public Service Comm,* 130 Mich App 470, 483; 344 NW2d 321 (1983), this Court stated that the factfinder's determinations as to credibility are accorded primacy because he is the only person to see and hear the live witnesses. Hence, this Court implied that, absent persuasive reasons for according the testimony different weight or assessing its credibility differently, the reviewing body should adopt the factfinder's determinations because they would be supported by substantial evidence on the whole record. This Court also stated that expert opinion testimony is substantial if offered by a qualified expert who has a rational basis for his views, whether or not other experts disagree. *Id.* This holding is consistent with MCL 418.861a(3); MSA 17.237(861a)(3), which defines substantial evidence as "such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion."

In this case, the magistrate reviewed the deposition testimony of the expert witnesses rather than hearing their testimony live. The magistrate then rejected Spitz' testimony that decedent suffered a myocardial infarction, which, as noted above, differed substantially from his earlier conclusions. The magistrate rejected Spitz' testimony, in part, because Spitz had failed to indicate the basis for such conclusion. The appellate commission found that Spitz testified that he came to his conclusion that decedent had suffered a heart attack after reviewing the microscopic slides he had prepared. Hence, the appellate commission held that the magistrate's finding overlooked this testimony and,

therefore, was erroneous. Having reviewed the record, we believe that the appellate commission misinterpreted the finding made by the magistrate. While Spitz did testify that he concluded that decedent suffered a myocardial infarction after reviewing the slides, Gerisch, who had previously seen tissues containing evidence of myocardial infarction, explained why the slides did not show evidence of a myocardial infarction. In sum, the magistrate's finding that Spitz failed to indicate the basis for his conclusion that decedent had suffered a myocardial infarction was supported by substantial evidence and should not have been overturned by the appellate commission.

Defendant also claims that the appellate commission erred when it held that Micallef's testimony concerning the stair-climbing incident was admissible pursuant to MRE 803(1) and (3). The magistrate ruled that Micallef's testimony was admissible pursuant to MRE 803(3), which provides:

> Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

While decedent's statements concerning how he felt were admissible pursuant to this rule, decedent's statement concerning the stair climbing was not. *Cooley v Ford Motor Co,* 175 Mich 199, 204; 437 NW2d 638 (1988). See also McCormick, Evidence (2d ed), § 291, pp 689-690.

The appellate commission, however, concluded

that the stair-climbing testimony was admissible pursuant to MRE 803(1), which provides:

> Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Decedent's statement described an event, the "taking" of stairs, perceived by the declarant, who had "just" experienced the activity. Hence, the appellate commission properly determined that decedent's statement was admissible as a present sense impression. *Johnson v White,* 430 Mich 47, 55-57; 420 NW2d 87 (1988); *Hewitt v Grand Trunk W R Co,* 123 Mich App 309, 316-318; 333 NW2d 264 (1983).

Defendant also claims that the appellate commission improperly applied the competent, material and substantial evidence standard to the magistrate's finding, quoted above, that the proof of the stair-climbing incident and its relationship to decedent's myocardial infarction was speculative. As previously discussed, the appellate commission relied on the statement decedent made to Micallef, finding it admissible pursuant to MRE 803(1) and (3). The appellate commission then held that decedent's climbing three flights of stairs was a specific work-related event. In addition, the appellate commission noted that plaintiff's experts linked that incident to decedent's myocardial infarction. Again, the question before the appellate commission was whether the magistrate's fact findings were supported by competent, material and substantial evidence on the whole record. Reviewing Micallef's testimony, we hold that the magistrate's conclusion concerning the speculative nature of the stair-climbing incident and its relationship to

decedent's heart attack was supported by competent, material and substantial evidence on the whole record.

In light of our decision on this issue, it is unnecessary for us to decide whether the magistrate and the appellate commission improperly applied MCL 418.301(2); MSA 17.237(301)(2).

We reverse the appellate commission's order and reinstate the magistrate's order.