**UNITED STATES of America, Plaintiff,**

**v.**

**Zelner HAMILTON, Jr.,
et al., Defendants.**

**Criminal Action No. 3:95CR–78–H.**

United States District Court,
W.D. Kentucky,
Louisville.

Oct. 24, 1996.

Philip C. Chance, Asst. U.S. Atty., United States Attorney's Office, Louisville, KY, for Plaintiff.

Tim McCall, Mark D. Chandler, Louisville, KY, for Hamilton.

Thomas E. Clay, C. Fred Partin, Louisville, KY, for Anderson.

### MEMORANDUM OPINION

HEYBURN, District Judge.

The first matter before the Court is a motion in limine filed by the United States to admit eleven hearsay statements of Gail Duncan, a confidential informant who is now deceased. The matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), who recommended that all of the statements be admitted except those contained in Statement No. 1. Defendant Hamilton filed written objections to the Magistrate Judge's report. Having reviewed the Magistrate Judge's report, the Court accepts his Findings of Fact, Conclusions of Law and Recommendation for the reasons he stated. However, the Court would add that Duncan's statements may also fall within the unavailable declarant hearsay exception under Rule 804(b)(5), which is discussed below.

The second matter is a motion in limine filed by Defendant Cornelius Anderson to exclude any testimony regarding Duncan's identification of Anderson at an alleged drug transaction on January 31, 1995. The Court must consider three issues to determine whether Duncan's identification of Anderson is admissible: (1) whether the photographic array shown to Duncan was unduly suggestive and, if suggestive, was nevertheless reliable; (2) whether the out-of-court identification is admissible under an exception to the hearsay rule; and (3) whether admission of the out-of-court identification violates the Confrontation Clause of the Sixth Amendment. Although the unusual facts of this case raise many difficult issues, the Court concludes that Duncan's out-of-court identification of Anderson is admissible.

### I.

Gail Duncan played a vital role in the investigation that culminated in the present indictment and, according to her statements, purchased illegal drugs from some of the defendants on several occasions while serving

as a confidential informant for the Drug Enforcement Agency ("DEA"). On January 31, 1995, Special Agent Schremp and Detective Warman met with Duncan who had arranged to purchase four ounces of cocaine from Deron Cole, who is also now deceased, or Zelner Hamilton that evening. Agent Schremp and Detective Warman followed Duncan in separate vehicles to 2406 W. Broadway, Louisville, Kentucky, where the meeting was to take place. Duncan arrived at approximately 9:27 p.m. She was not wearing a transmitter and was not accompanied by an undercover officer. Duncan's purchase of cocaine was completed at 9:55 p.m.

Approximately ten minutes later she met with Agent Schremp and Detective Warman for debriefing. During the debriefing, Duncan told them that two individuals were present during the transaction: Deron Cole and another individual whom she recognized but did not know. Thereafter the officers showed her 20–30 photographs of individuals thought to be involved in the drug conspiracy. Warman testified that Duncan immediately selected Anderson's photograph from the pack and identified him as the individual she saw with Deron Cole. Warman also testified that he identified Anderson twice that evening: once on the back steps of 2406 W. Broadway and again in the passenger seat of Cole's car. Agent Schremp memorialized Duncan's identification of Anderson in a typed statement prepared soon after the debriefing, which Duncan never verified. Duncan's verified statement did not identify Anderson as the individual she saw with Deron Cole that evening.

## II.

■ The first issue concerning the admissibility of Duncan's identification of Anderson is whether the photographic array shown to Duncan consisting of only those thought to be co-conspirators was unduly suggestive and resulted in a substantial risk

of misidentification.[1] Identification evidence is generally admissible provided that any pretrial identification procedure was not impermissibly suggestive or, if impermissibly suggestive, did not create a substantial risk of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Reliability is the "linchpin" in determining the admissibility of pretrial identification testimony. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253.

■ In assessing the validity of a pretrial identification, the Sixth Circuit follows a two-step analysis. The court must first consider whether the procedure was unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir.1994). If the court finds that the procedure was unduly suggestive, it then must evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable. *Id.* at 1071. In assessing the reliability of the identification, five factors should be considered: (1) the opportunity of the witness to view the accused at the time of the crime; 2) the attentiveness of the witness; 3) the accuracy of the witness' pre-photographic line-up description of the accused; 4) the level of certainty demonstrated at the photographic viewing; and 5) the time that had elapsed between the crime and the photographic identification. *Id.* at 1071; *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253; *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–383.

■ The Court finds that the procedure used to obtain Duncan's pretrial identification could be considered suggestive on its face. By only showing Duncan pictures of individuals thought to be involved in the conspiracy, Detective Warman may have suggested that one of them was present at the meeting with Duncan. Moreover, Duncan may have known then that the selection of

---

[1]. The Court recognizes the special dangers associated with identification testimony and the special importance of cross-examination when such hearsay is proffered. However, the Supreme Court has stated that: "There does not appear in our opinions, and we decline to adopt today, the principle that, because of the mere possibility of

suggestive procedures, out-of-court statements of identification are inherently less reliable than other out-of-court statements." *U.S. v. Owens*, 484 U.S. 554, 561, 108 S.Ct. 838, 843, 98 L.Ed.2d 951 (1988). Therefore, the Court will treat Duncan's statement of identification the same as any other out-of-court statement.

*any* photograph apparently would have given the police a "correct" answer.

■ After evaluating the totality of the circumstances, however, the Court finds that Duncan's identification was nevertheless reliable. Duncan had substantial opportunity to view Anderson closely during course of the transaction. The circumstances are completely different than those in which an eyewitness has difficulty seeing or identifying a defendant. Duncan was with Anderson for approximately 27 minutes both inside the house at 2406 W. Broadway and outside on the back steps under artificial light. Moreover, according to Warman's testimony, Duncan said she had seen Anderson before at 2406 W. Broadway. Duncan was not a casual observer, as is often the case with eyewitness identification. Duncan was a confidential informant who would be expected to pay attention to detail, for she knew that subsequently she would have to report back to Agent Schremp and Detective Warman.

As to the third factor, there is no evidence that Duncan gave the officers a description of Anderson before making a photographic identification. However, while an accurate pre-photographic description of Anderson would certainly point to the reliability of her identification, the lack of one neither weighs in favor of or against the reliability of Duncan's identification. Rather, the officers' failure to procure a pre-photographic description goes to the officers' credibility, which can be tested on cross-examination. Moreover, according to Warman's testimony, Duncan immediately selected Anderson's photograph and identified him with certainty as the man she saw with Deron Cole. This identification occurred only 10–15 minutes after the drug transaction. Weighing all these factors, the Court finds that the identification was reliable and there was no substantial likelihood of misidentification.

## III.

Next the Court must consider whether the out-of-court statement of identification is admissible under an exception to the hearsay rule. There are two possibilities: Rule 803(1) present sense impression exception and Rule 804(b)(5) unavailable declarant residual hearsay exception.

### A.

■ Although Duncan's photographic identification of Anderson could be characterized as a present sense impression because it occurred "immediately thereafter," *see Burrows v. General Motors Corp.,* 999 F.2d 539 (1993 WL 243780) (6th Cir.1993) (unpublished opinion) (general discussion of cited cases statements held inadmissible because time of event could not be determined); *First State Bank of Denton v. Maryland Casualty Co,* 918 F.2d 38, 42 (5th Cir.1990) (statements made "on the heels" of the event are admissible); *United States v. Peacock,* 654 F.2d 339, 350 (5th Cir.1981) (statements of deceased declarant when made with "substantial contemporaneity" with the event); *United States v. Blakey,* 607 F.2d 779, 785–86 (7th Cir.1979) (statements made between six and twenty-three minutes after event admissible), the process of photographic identification involves more than a present sense. Certainly if Duncan gave Warman a description of the man she saw with Deron Cole that evening prior to the photographic identification, her descriptive statement would be a present sense impression. However, a photographic identification involves an intervening step that required Duncan to reflect back to what she saw that night and perhaps other occasions when she may have seen Anderson. With reflection some reliability, which goes to the very essence of the present sense impression hearsay exception, is lost. Though it is a close question, the Court finds that Duncan's photographic identification of Anderson falls outside of the present sense impression exception.

### B.

■ Once a declarant is declared unavailable, Rule 804(b)(5) permits admission of statements which would otherwise be excluded by the hearsay rule if the statements have equivalent circumstantial guarantees of trustworthiness, and the court determines that (1) they are offered to prove a material fact, (2) they are more probative than other evidence obtainable through reasonable efforts, and

(3) the interests of justice would best be served by admission of the statements into evidence.

In *U.S. v. Barlow*, 693 F.2d 954, 962 (6th Cir.1982), the Sixth Circuit articulated factors to be considered in determining whether grand jury testimony has equivalent circumstantial guarantees of trustworthiness:[2] the witnesses's relationship with both the defendant and the government; the witness's motive for testifying; whether the testimony was from personal knowledge; whether the witness had ever recanted the testimony; and whether the testimony was corroborated. In addition, a court may consider other factors having no direct bearing on circumstantial guarantees of trustworthiness to determine whether the purposes of the rules of evidence and the interests of justice will best be served by the admission of the out-of-court statement. *Id.* at 962–63.

Duncan's identification statement clearly concerns a material fact: whether Anderson was present during the drug transaction on January 31, 1995. It is also the most probative evidence of Anderson's involvement in the drug conspiracy. More importantly, Duncan's identification statement has adequate guarantees of trustworthiness. Though Duncan had personal reasons for working as a confidential informant,[3] her mo-

tivations for testifying were certainly not as suspect as those of a co-conspirator; she had no motivation to implicate Anderson and to exonerate herself. *Compare United States v. Gomez–Lemos*, 939 F.2d 326, 330 (6th Cir. 1991) (discussing a co-conspirator's strong motivation to implicate the defendant and to exonerate himself). Moreover, her interest in gaining favor with the police to avoid prosecution more likely gave her a greater incentive to be extremely accurate in her statements. She knew that the agents had the area under surveillance. Any attempted deception would only have worked to arouse the suspicion of the officers and to lose for Duncan their favor. Her identification statement also concerns matters of which she had personal knowledge; that is, who she saw with Deron Cole on the evening of January 31, 1995. In addition, Duncan's identification is corroborated by Detective Warman's in-court testimony. As previously noted, Detective Warman testified during a pre-trial hearing and will testify at trial that he also identified Anderson twice that evening. Finally, there is no evidence that Duncan ever recanted her identification statement.

The Court also finds that the purposes of the rules of evidence and the interests of justice will be served by admission of the evidence.[4] The need for the evidence is

2. Though the present case does not concern the admissibility of grand jury testimony, the Court finds the factors articulated in *Barlow* relevant and helpful in determining whether Duncan's identification has sufficient guarantees of trustworthiness.

3. Duncan was supplying information to the police in hopes of avoiding prosecution and losing her home in relation to a drug case in which she was involved.

4. In *Barlow*, the court said that other factors which have no direct bearing on circumstantial guarantees of truthworthiness may be considered to determine whether the purposes of the rules of evidence and the interests of justice will best be served by the admission of grand jury testimony. One factor is the subject matter of the evidence. The court said if the testimony is direct evidence of guilt or critical proof of guilt, other factors, such as corroboration, must weigh heavily in favor of admissibility. On the other hand, if the evidence goes to a collateral matter or is circumstantial or cumulative evidence, the other factors need not be as strong. *Id.* at 962–63. In the present case, the identification is clearly direct

evidence of guilt and critical proof of guilt. And though independently corroborated by Warman's own identification of Anderson, the Court recognizes the possibility that if the jury disbelieves Warman, there will be less than extensive additional evidence to corroborate Duncan's identification. Duncan was not wearing a transmitter, she did not sign the back of Anderson's photograph after identifying him, and her signed, hand-written statement does not identify Anderson as the individual she saw with Deron Cole. The only documented evidence of Duncan's identification is Agent Schremp's typed statement prepared that evening, which Duncan never verified. Nevertheless, the Court finds that the other factors discussed above weigh heavily in favor of admissibility. In addition, the nature of the hearsay statements at issue in *Barlow* and the present case are distinguishable. *Barlow* concerned the admission of grand jury testimony, which generally occurs months after-the-fact. In contrast, the hearsay statement in question here was made immediately after the drug transaction took place, while the events were fresh in Duncan's mind. Duncan did not have months to think about what she saw (or forget what she

great and admission of it will help the search for the truth. The Court finds that Duncan's identification of Anderson is admissible under Rule 804(b)(5).

## IV.

■ Having determined the evidence is admissible under Rule 804(b)(5), the Court must further analyze whether admission of such hearsay testimony would violate Anderson's right to confrontation under the Sixth Amendment. The Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right made obligatory on the states by the Fourteenth Amendment. *Dutton v. Evans,* 400 U.S. 74, 79, 91 S.Ct. 210, 214–15, 27 L.Ed.2d 213 (1970). However, the constitutional right to confrontation does not mean that hearsay evidence can never be introduced. *Id.* at 80, 91 S.Ct. at 215 (recognizing the admissibility of dying declarations, testimony of deceased witness who has testified at a former trial, and other "analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses").

■ In *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), the Supreme Court set forth a general approach of analyzing whether hearsay which is admissible under one of the exceptions to the hearsay rule also meets the requirements of the Confrontation Clause. The first prong requires a showing that the declarant is unavailable. *Id.; Gomez–Lemos,* 939 F.2d at 331. The second prong requires that the hearsay statement of an unavailable declarant bear adequate "indicia of reliability." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539; *Gomez–Lemos,* 939 F.2d at 331. The primary concern of the reliability inquiry must be to determine whether, under the circumstances, the unavailability of the declarant for cross-examination deprives the jury of a satisfactory basis for evaluating the truth of the declarant's out-of-court statement. *Dutton,* 400 U.S. at 89, 91 S.Ct. at 219–20. In *Roberts,* the Court found that

"[r]eliability may be inferred" if the proffered evidence "falls within a firmly rooted hearsay exception." 448 U.S. at 66, 100 S.Ct. at 2539. This is true because statements admitted under a "firmly rooted" hearsay exception are so trustworthy that adversarial testing would add little to their reliability. *Idaho v. Wright,* 497 U.S. 805, 820–21, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990).

■ The residual hearsay exception of Rule 804(b)(5), however, is not a firmly rooted hearsay exception. *United States v. Canan,* 48 F.3d 954, 961 (6th Cir.1995); *see also Barlow,* 693 F.2d at 964. Hearsay statements admitted under Rule 804(b)(5) are "presumptively unreliable." *Wright,* 497 U.S. at 818, 110 S.Ct. at 3148. Therefore, the United States must demonstrate indicia of reliability sufficient to satisfy the Confrontation Clause before evidence may be admitted. *Id.* at 821, 110 S.Ct. at 3149. In *Gomez–Lemos,* the Sixth Circuit held that the testimony of an alleged co-conspirator is not sufficiently reliable to meet the requirement of the Confrontation Clause, due to a co-conspirator's "strong motivation to implicate the defendant and to exonerate himself." *Id.* at 330 (*quoting Bruton v. United States,* 391 U.S. 123, 141, 88 S.Ct. 1620, 1630–31, 20 L.Ed.2d 476 (1968)). While Duncan had something to personally gain by her involvement, she had no motive to implicate Anderson and to exonerate herself. Her motives, therefore, are not inherently suspect as those of a co-conspirator. Since her motives for testifying cannot be fairly analogized to those of a co-conspirator, the Court concludes that *Gomez–Lemos* does not expressly govern the result in this case.

In *Idaho v. Wright,* the Court held that the particularized guarantees of trustworthiness required for admission under the Confrontation Clause must "be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." 497 U.S. at 820, 110 S.Ct. at 3149. The Court held that adequate indicia of reliability must not be found from subsequent corroboration of the

---

saw) and then prepare a statement for the police. Thus, it seems that while extensive corroboration would be very important in the case where critical grand jury testimony is being offered in order

to ensure the reliability of the statements, it would be less important in this case where there was little time for fabrication or forgetfulness.

criminal act, but rather from the circumstances surrounding the making of the out-of-court statement. *Id.* at 821, 110 S.Ct. at 3149.

■■■ The Supreme Court has identified several factors which attest to the reliability of a challenged out-of-court statement:

1. The statement contained no assertion of past fact and consequently carried on its face a warning to the jury against giving it undue weight.

2. The declarant was in a position to know the identity and role of the participants in the crime.

3. The possibility was remote that the statement was founded on faulty recollection.

4. It was not likely that the declarant misrepresented the defendant's involvement.

5. The statement was spontaneous.

*Dutton,* 400 U.S. at 88–89, 91 S.Ct. at 219–20.

After weighing the factors, the Court believes that Duncan's identification has adequate guarantees of trustworthiness. In the instant case, the statement was plainly an assertion about a past fact—that Anderson was present during the transaction—and, thus, carries no warning on its face to the jury against giving it undue weight. However, as the Sixth Circuit held in *Barlow,* the absence of this factor is not controlling when, as here, other adequate indicia of reliability are present.[5] *Barlow,* 693 F.2d at 965. As noted, Duncan had substantial opportunity to view Anderson and was clearly in a position to know his identity and his role in the drug conspiracy. Furthermore, the possibility is remote that the statement was founded on faulty recollection since it was given 10–15 minutes after the transaction occurred. Fi-

nally, it is unlikely that Duncan would attempt to misrepresent Anderson's involvement in the conspiracy because she had no motive to implicate Anderson, nor any motive to exonerate herself by shifting blame to others. Furthermore, she knew that her actions were being monitored by the police, thus making it unlikely that she would attempt to pass off a false identification. Finally, Duncan's identification was spontaneous because she immediately selected Anderson's photograph on her own initiative without prompting by the officers.

## V.

■■■ The Court has primarily focused upon the hearsay and Sixth Amendment issues raised by Duncan's out-of-court identification of Anderson. However, Defendant does not stop at questioning the reliability or constitutional propriety of using Duncan's identification. Defendant makes a more personal attack by implying either that Duncan never identified Anderson at all or that she did not do so with the certainty that Agent Schremp and Detective Warman now assert. In essence, Defendant is saying that Schremp and Warman are lying. No doubt someone could completely fabricate a hearsay statement with sufficient indicia of reliability to be admitted under a hearsay exception. However, little more than a suspicion suggests that Agent Schremp and Detective Warman have done that here.[6] More to the point, it is not hearsay for Schremp and Warman to assert as true that Duncan made an identification to them. Schremp and Warman will be available for cross-examination to test the truthfulness of that assertion. In addition, Warman's own identification of Anderson that evening will be subject to cross-examination. The jury will have ade-

---

5. The Court will consider giving the jury a cautionary instruction on identification statements to avoid giving the identification undue weight.

6. Defendant points out that Duncan's verified statement contains no mention of the identification and that Schremp's typed statement memorializing Duncan's identification was not verified by Duncan. Under the circumstances, the Court does not find such evidence suspicious on its face. To the contrary, Schremp's dictated statement supports his own testimony that Duncan

made an identification. Moreover, Schremp's statement memorializing Duncan's identification were written before Duncan's death. It makes little sense that Schremp would falsify Duncan's identification knowing she would be called to testify in court about what she told them. Furthermore, whether Detective Warman is lying about his own identification of Anderson is a separate issue that will be tested on cross-examination.

quate opportunity to consider and reject everything that Schremp and Warman say which lacks credibility.

The Court is entering an order consistent with this Memorandum Opinion.

## ORDER

This matter is before the Court on a motion in limine filed by the United States to admit eleven hearsay statements of Gail Duncan, a deceased confidential informant, and a motion in limine filed by Cornelius Anderson to excluded Duncan's identification of Anderson on the evening of January 31, 1995. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Magistrate Judge's Findings of Fact, Conclusions of Law and Recommendation is AFFIRMED and the United States' motion in limine is SUSTAINED.

IT IS FURTHER ORDERED that Defendant Anderson's motion in limine is DENIED. However, the Court reserves the right of course to issue appropriate cautionary instructions to the jury when appropriate.