OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be affirmed.
 

 In this homicide and weapons possession prosecution, the People adduced evidence from two eyewitness-companions of defendant that, around 4:30 a.m. on August 12, 1993, at the corner of Monroe Avenue and 175th Street in the Bronx, defendant shot the victim at close range, causing his death. At trial, the People introduced as evidence tapes of 911 telephone calls made by one or more anonymous callers between 7:11 and 7:31 on the morning of the shooting, the substance of which was that the caller was then observing, in the immediate vicinity of the homicide site, the same man the caller had earlier seen committing the crime. Other evidence was introduced identifying defendant as the person the caller pointed out on the tapes. Included within the 911 tapes were the following reports:
 

 “[t]here was a murder over here, um, about 4:30 or 5:00 o’clock. The police is downstairs and
 
 the guy that did it
 
 is standing outside.
 

 * * *
 

 “Hello. They’re grabbing the wrong guy right here. * * * The guy that they looking for is going into the building across the street. The number of the building is 240. And they got the wrong guy right now. The guy that they have right now has green and black striped shorts and the guy
 
 they’re supposed to be getting
 
 has on plain green shorts” (emphasis supplied).
 

 The tapes were received in evidence under the present sense impression exception to the hearsay rule, over objection that adequately drew the trial court’s attention to the fact that the declarant on the tapes was referring to observations made at the time of the shooting several hours earlier:
 

 
 *743
 
 “it’s not a present impression. She’s referring back to something that happened earlier.”
 

 The 911 tapes were erroneously admitted under the present sense impression exception to the hearsay rule. The primary if not the sole probative value of the tapes was the identification of the “guy * * * [in the] plain green shorts” the caller then had in view as “the guy that did it,” that is, the man the caller had observed firing the fatal shots at
 
 4:30
 
 a.m. As to the latter, and, undisputably, most probative portion of the declaration, the declarant had “time for reflection”
 
 (People v Brown,
 
 80 NY2d 729, 733) from 4:30 a.m. to after 7:00 a.m. when the first 911 call was made. That extended interval fell far beyond any acceptable time frame for admissibility under the present sense impression exception. Absence of any significant time for reflection lies at the heart of that exception, and assures the reliability of the declaration. “[B]ecause the contemporaneity of the event observed and the hearsay statement describing it leaves no time for reflection * *
 
 *
 
 the likelihood of deliberate misrepresentation or faulty recollection is eliminated”
 
 (id.).
 

 The People argue that introduction of the tapes constituted harmless error. A preliminary question in addressing that contention is the appropriate standard of harmless error analysis. Defendant claims before this Court that introduction of the 911 tapes deprived him of his right to confrontation under the Sixth Amendment of the Constitution. Were this claim of constitutional error properly before us and we agreed, our task would be to determine whether introduction of the tapes was harmless error beyond a reasonable doubt
 
 (see, Lilly v Virginia,
 
 527 US 116, 139-140;
 
 People v Ayala,
 
 75 NY2d 422, 431-432;
 
 United States v Cunningham,
 
 145 F3d 1385, 1394).
 

 Defendant, however, never based his trial objection to the 911 tapes on the Confrontation Clause. Rather, the only issue raised before the trial court was the erroneous admission of the tapes under our State common-law hearsay rule. As the Supreme Court of the United States has repeatedly recognized, statutory or common-law hearsay rule exceptions may not necessarily satisfy the mandate of the Confrontation Clause regarding admissibility of out-of-court statements
 
 (see, Lilly v Virginia, supra,
 
 527 US, at 133-135;
 
 Idaho v Wright,
 
 497 US 805, 817-818). Even when an out-of-court statement is admissible under a State hearsay rule exception, its introduction nonetheless violates the Confrontation Clause unless it falls within a “firmly rooted hearsay exception”
 
 (Ohio v Roberts,
 
 448
 
 *744
 
 US 56, 66), or the prosecution makes a “showing of particularized guarantees of trustworthiness”
 
 (id.),
 
 “drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief’
 
 (Idaho v Wright, supra,
 
 497 US, at 820). The defendant’s failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error which, as previously discussed, differs from the trial evidence error which was preserved.
 

 Consequently, the proper standard of harmless error analysis here is that which we apply for nonconstitutional trial error
 
 (see, People v Crimmins,
 
 36 NY2d 230, 241-242), i.e., whether (1) proof of guilt was overwhelming; and (2) there was no significant probability that the jury would have acquitted had the proscribed evidence not been introduced.
 

 Both criteria are met in this case. The two eyewitnesses, who were well acquainted with defendant, gave unequivocal testimony that he fired the fatal shots. While the defense vigorously attacked their credibility, the witnesses’ version of the crime remained unshaken. Moreover, just hours after the shooting, defendant visited his girlfriend and announced that he was leaving the area, thus furnishing both evidence of consciousness of guilt and corroboration of the testimony of one of the eyewitnesses. Defendant submitted no contradictory evidence. The cumulative evidence satisfied the first prong of the
 
 Crimmins
 
 test.
 

 Nor was there any significant probability of acquittal had the 911 tapes not been introduced. The tapes were devoid of any details as to what the caller observed several hours earlier or how she happened to have witnessed the event. Moreover, the tapes arguably disclosed discrepancies in the description of defendant’s clothing that defense counsel attempted to exploit. Thus, at most, the tapes weakly confirmed the two eyewitnesses’ testimony. It therefore was far from probable that the jury’s acceptance of their credibility turned on the 911 tapes. Accordingly, the introduction of the tapes was harmless error in the case at bar.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed in a memorandum.
 

 Inclusion of only applications which were granted.