**Theresa May HALLUMS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CM–1354.**

District of Columbia Court of Appeals.

Argued April 3, 2001.
Decided Feb. 12, 2004.

---

Richard Greenlee, Public Defender Ser-
vice, with whom James Klein and Samia

Fam, Public Defender Service, were on the brief for appellant.

Matthew Sloan, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., John Interrante, and Danny Onorato, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, REID, and GLICKMAN, Associate Judges.

PER CURIAM:

The judgment of the trial court is affirmed for the reasons stated in Parts I and II of Judge Ruiz's opinion for the court, and the separate concurring opinions of Judge Reid and Judge Glickman. Judge Ruiz files a separate opinion dissenting from the concurring opinions. In the concurrences affirming the judgment, Judge Reid concludes that any error was harmless, and Judge Glickman, though disagreeing with Judge Reid on that point, concludes there was no error. In her dissent, Judge Ruiz concludes there was constitutional error and that it was not harmless.

RUIZ, Associate Judge, for the court:

Theresa Hallums was convicted after a one-day bench trial of second degree theft for stealing merchandise from a department store. She raises evidentiary and constitutional challenges to the decision of the trial court to admit into evidence as a present sense impression a hearsay statement of a security officer identifying her as the thief as he watched the shoplifting incident on a video monitor. We decide to adopt the hearsay exception for present sense impressions as the law of the District of Columbia, but as set out in the various opinions, do not as a division come to the conclusion that the hearsay identifi-

cation at issue in this case was admissible on that basis.

## I.

### A. Evidence At Trial

Kenneth Barrick, a loss prevention officer employed by the Lord & Taylor department store, testified that on January 13, 1998, he was operating the closed circuit television system used to monitor potential shoplifting activity at the store located at 5255 Western Avenue, N.W., Washington, D.C. Barrick and Officer Lee, another security officer, observed a woman enter the store and remove several Coach handbags from a display rack. Lee then instructed Barrick to go out to the sales floor and apprehend the woman. By the time Barrick reached the store's Western Avenue exit ten to fifteen seconds later, he saw the woman outside on the sidewalk carrying a large bag and entering a waiting van. The woman glanced over her shoulder in Barrick's direction and then got into the van, which sped away. Barrick made an in-court identification of appellant as the person he saw the day of the theft, and whose image was captured stealing handbags in an enlarged photograph made from the closed circuit videotape.

The government's other witness, Danielle Gibson, was also a member of Lord & Taylor's security force at the time of the theft. She testified that upon reviewing the videotape after the incident, she recognized the woman taking the handbags as someone she had observed on a previous occasion, and made an in-court identification of appellant as the shoplifter portrayed on the tape. Gibson related that approximately three months before the incident, she had seen appellant at close range for about forty-five minutes at a

Hecht's store across the street,[1] and later that same day had observed her again via surveillance cameras in the handbag department of the Lord & Taylor store.

The government also introduced the videotape of the shoplifting incident, which was played for the trial court's review. Appellant did not testify.

## B. Hearsay Statement & Trial Court's Ruling

The disputed hearsay statement was first elicited when the prosecutor asked Barrick to describe Officer Lee's reaction to watching the woman remove handbags on the video monitor:

> [Prosecutor]: Mr. Barrick, this other officer, could you describe his reaction when he saw—was watching the tape-
> . . .
> [Barrick]: [Lee] became excited and pointed to the camera, to the monitor I should say and said, that's the lady that hit the Coach handbags on a previous occasion.[2]

The prosecutor continued to lay a foundation to have the statement admitted as an excited utterance[3] and a present sense impression. Asked about Lee's statement, Barrick testified that "[Lee] stated that he recognized her from a previous [occasion]." Defense counsel objected to the statement as hearsay, arguing that the statement was not admissible as a present sense impres-

sion because it was an identification, noting that "[t]he reason that there's a separate identification exception [under the terms of D.C.Code § 14–102(b)(3) ] is to allow reliable identifications to be admitted into evidence. And this is taking an [un-]reliable identification and trying to say that it should be admissible merely because the person made it while watching a tape." Interpreting *Burgess v. United States*, 608 A.2d 733 (D.C.1992) (per curiam), the prosecutor argued that "the indicia that the court [looks for are] the spontaneous nature of the statement, the contemporaneous nature of the statement, [and] both of those indicia are present here." The trial court admitted the statement as a present sense impression. Adopting the prosecutor's interpretation, the court concluded, "I'm going to receive it and treat [defense counsel's] argument as going to the weight of the evidence." When finally asked the question for the record, the following exchange occurred:

> [Court]: What did [Lee] say?
> [Barrick]: He said, that's the woman and he pointed to the monitor. And I asked him what woman and he said, that's Theresa Hallums, the woman that hits for handbags.
> [Court]: One second. I will strike from the evidence everything after the word, Hallums.

---

1. There was no explanation of the circumstances under which Gibson would have observed appellant at such close range for an extended period of time, but the implication is that it was during another shoplifting incident at the Hecht's store, which also is owned by Lord & Taylor's parent company.

2. The testimony at trial does not explain how Lee knew that the shoplifter had stolen Coach handbags on a previous occasion, nor how he knew her name. It would appear from Gibson's testimony that Lee's information was based on an incident three months earlier at

the Hecht's store across the street. See note 1, *supra*.

3. It is unclear whether Lee made the statement before or after the woman started taking the Coach handbags. Barrick stated that Lee "became excited and pointed to the . . . monitor." Presumably, the prosecutor had in mind that watching the woman steal the handbags or, alternatively, recognizing the woman as one who stole handbags, was a "startling event."

At the close of the evidence, defense counsel again sought to exclude Barrick's testimony about Lee's out-of-court statement identifying appellant, arguing that nothing distinguishes this case from identifications at a show-up, a line-up, or a photo array, none of which can be admitted under D.C. CODE § 14–102(b)(3) (2001) unless the out-of-court declarant is available for cross-examination.

In announcing his verdict, the trial judge noted that the evidence was "far from overwhelming," and the case was "close" and "posed considerable difficulty to decide." The trial judge found appellant guilty based on: 1) the in-court identification made by Gibson, who testified that three months before the incident she had spent forty-five minutes paying close attention to Ms. Hallums at the Hecht's store and then saw the Lord & Taylor videotape after the incident; 2) the in-court identification made by Barrick, who watched the shoplifter on the monitor and then saw the woman for a few seconds in broad daylight as she was leaving the store before she got into a van; and 3) Lee's out-of-court declaration, as he watched the video monitor, that he recognized the woman as Ms. Hallums. Although the trial court acknowledged that "the govern-

ment's case [is] heavily centered on the videotape," it declined to base the finding of guilt on a comparison between the tape and the court's own observations of appellant.[4]

## II.

 Appellant argues that the trial court erred in admitting the statement, "that's Theresa Hallums," under the present sense impression exception to the hearsay rule. She claims that the statement is not a present sense impression because it does not describe or explain a contemporaneous event or condition, but rather identifies a person based on memory of a past event, similar to an identification from a photo array or a lineup. Reasserting her argument in the trial court, she also contends that, as an out-of-court *identification*, the admissibility of the statement is governed exclusively by § 14–102(b)(3),[5] which requires the declarant to be available for cross-examination. The government responds that many courts have allowed out-of-court identifications as present sense impressions without the declarant being available, and that the statement at issue in this case comes within

---

4. Defense counsel had argued that the trial court should make its own determination whether the shoplifter shown on the video was appellant. The trial court noted that there was only a three-second segment of the tape where the shoplifter's face could be seen with relative clarity, but that, "[n]othing viewing that tape causes me to think that it's not Ms. Hallums."

5. Section 14–102(b)(3), which is virtually identical to Federal Rule of Evidence 801(d)(1)(C), excludes out-of-court identifications from the definition of hearsay, but only if the witness is available for cross-examination:

 A statement is not hearsay if the declarant testifies at the trial or hearing and is subject

to cross-examination concerning the statement and the statement is . . . (3) an identification of a person made after perceiving the person.

D.C. CODE § 14–102(b)(3).

 Federal Rule of Evidence 801(d)(1)(C) provides:

 (d) Statements which are not hearsay. A statement is not hearsay if-

 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

 (C) one of identification of a person made after perceiving the person.

FED. R. EVID. 801(d)(1)(C).

that exception to the hearsay rule.[6] *See, e.g., United States v. Delaplane,* 778 F.2d 570, 574 (10th Cir.1985) (allowing the statement, "Michael's back," as a present sense impression); *United States v. Earley,* 657 F.2d 195, 198 (8th Cir.1981) (admitting the statement, "Oh Mom, what am I going to do? That sounded just like Butch," as a present sense impression or excited utterance). Although we have not in the past expressly considered the interaction between the statute and the common law of hearsay, we are confident that they provide separate bases for admissibility. The statute provides that an out-of-court identification "is not hearsay" if the declarant made the identification "after perceiving the person," testifies at trial, and is available for cross-examination concerning the statement. § 14–102(b)(3). Conversely, an identification that is part of an out-of-court statement not satisfying § 14–102(b)(3) *is* hearsay, but may be admissible nonetheless under an exception to the hearsay rule independent of the terms of § 14–102(b)(3). *See Lyons v. United States,* 683 A.2d 1080, 1082–83 (D.C.1996) (hearsay statement identifying defendant by name admitted as both an excited utterance and a dying declaration). Because the out-of-court identification in this case does not satisfy the statute as the declarant was not available at trial, the first issue for decision is whether it was admissible under the exception for present sense impressions.

The present sense impression exception to the hearsay rule embodied in Federal Rule of Evidence 803(1) permits the admission of hearsay statements:

> describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

The declarant need not be available for cross-examination to admit a statement under this exception. *See id.*

While this court has referred to the hearsay exception for present sense impressions, *see, e.g., Burgess,* 608 A.2d at 738 (Rogers, C.J., concurring); *Walker v. United States,* 630 A.2d 658, 666 (D.C. 1993); *Pratt v. District of Columbia,* 407 A.2d 612, 616 n. 6 (D.C.1979), we have no statute or rule equivalent to the federal rule, nor have we formally recognized the exception in our case law. The closest this court has come to recognizing the present sense impression was in Chief Judge Rogers's concurring opinion in *Burgess* in which she stated that the "present sense impression exception to the hearsay rule is well rooted in our common law" and that "there is no principled basis ... on which to recognize [excited utterances, statements of present bodily condition, and statements of present mental state], but not the present sense impression exception

---

**6.** As an alternative ground for affirmance the government argues briefly that the statement also could have been admitted under the excited utterance exception to the hearsay rule. Hearsay statements may be admitted under the excited utterance exception if the following prerequisites are met:

> (1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or con-

structed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark. *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977) (citation omitted). We disagree with the government's assertion that this statement qualifies as an excited utterance. The government has not established, and the trial judge did not find, that Lee, a security officer presumably accustomed to watching shoplifters on the monitor, was in the requisite state of nervous excitement or physical shock. See note 3, *supra.*

... since all four exceptions are founded on the same policy." *Burgess,* 608 A.2d at 738 (Rogers, C.J., concurring).[7]

We agree with Judge Rogers that there is no reason why we should not accept the hearsay exception for statements of present sense impression along with the other related exceptions we recognize. The present sense impression exception to the hearsay rule is "one of the four hearsay exceptions encompassed by the ancient term *res gestae:* (1) statements of present bodily condition, (2) statements of present mental states and emotions, (3) excited utterances, and (4) statements of present sense impression." *Burgess,* 608 A.2d at 738 (Rogers, C.J., concurring) (citing *Steadman v. United States,* 358 A.2d 329, 332 (D.C.1976); *Watts v. Smith,* 226 A.2d 160, 162 (D.C.1967); *Wabisky v. District of Columbia Transit Sys., Inc.,* 114 U.S.App. D.C. 22, 23, 309 F.2d 317, 318 (1962); E. CLEARY, MCCORMICK ON EVIDENCE § 288 (3d ed.1984). All these types of statements share a degree of spontaneity that is the foundation of their trustworthiness. *See Nicholson,* 368 A.2d at 564 (discussing excited utterance); 2 JOHN W. STRONG, McCORMICK ON EVIDENCE § 271 (5th ed.1999) (comparing present sense impression with excited utterance). The official comment to Federal Rule of Evidence 803(1) and (2) explains that the present sense impression exception to the hearsay rule is based on the theory that the "substantial contemporaneity of [the] event and statement negative the likelihood of deliberate or conscious misrepresentation." FED. R. EVID. 803(1) & (2) advisory committee's note. The advisory committee's note also states that an additional assurance of relia-bility is that the in-court witness relaying the statement had equal opportunity to observe and corroborate the existence of the event or condition and may be cross-examined on the statement. *See id.; see also* McCORMICK ON EVIDENCE § 271 (1999) ("[T]he statement will usually have been made to a third person (the witness who subsequently testifies to it) who was also present at the time and scene of the observation ... and thus can provide a check on the accuracy of the declarant's statement and furnish corroboration."). A further safeguard is that the permissible subject matter of the exception for present sense impressions is limited to a description or explanation of the event or condition being perceived, which adds to its trustworthiness. *See* FED. R. EVID. 803(1) & (2) advisory committee's note (discussing permissible subject matter).

 Thus, we will recognize the hearsay exception for present sense impressions, *i.e.,* statements describing or explaining events which the declarant is observing at the time he or she makes the declaration or immediately thereafter, as we already have recognized the excited utterance exception, which also is grounded in the spontaneity of the statement. See discussion note 6, *supra.* Given that statements made in a state of excitement may impair the accuracy of the declarant's power of observation, there is no reason for us to accept the excited utterance exception and not the exception for arguably more reliable present sense impressions. *See Burgess,* 608 A.2d at 738 (Rogers, C.J., concurring); FED. R. EVID. 803(1) & (2) advisory committee's note (conveying criti-

---

7. While the concurring opinion by Judges Schwelb and Wagner in *Burgess* concluded that the statement at issue was "non assertive" conduct and thus fell outside the hearsay rules, *see id.* at 740, Chief Judge Rogers thought that the trial court properly admitted the decedent's statement identifying his assailant as "Tony" under the hearsay exception for present sense impressions. *See id.* at 739.

cism of excited utterance exception). *But see* WIGMORE, EVIDENCE § 1757, A 238 (James H. Chadbourne rev.1976) (rejecting exception for present sense impressions as unreliable without shock of startling event). The exception for present sense impressions is, moreover, narrower in scope and subject to fewer infirmities than the exception for excited utterances. *See* MCCORMICK ON EVIDENCE § 271 (1999) (describing the development of the exception). The time within which an excited utterance may be made is measured by the duration of the stress, while present sense impressions may be made only while the declarant is actually perceiving the event, or immediately thereafter—a more circumscribed time period than that permitted for excited utterances. *Compare Price v. United States*, 545 A.2d 1219, 1226–27 (D.C.1988) (admitting as excited utterance statement made three hours after startling event) (citing cases) *with State v. Moore*, 82 Hawai'i 202, 921 P.2d 122, 138 (1996) (statements made some time after shooting when defendant flagged down police were not within present sense impression exception as they were not contemporaneous with event described, but were admissible as excited utterances).

■ The classic present sense impression relates contemporaneous events or conditions as they are perceived by the observer's senses. *See, e.g., Brown v. Tard*, 552 F.Supp. 1341, 1351 (D.N.J.1982) (admitting as present sense impression statement made in course of telephone conversation that "the guy is here to fix the air conditioner"); *People v. Buie*, 86 N.Y.2d 501, 634 N.Y.S.2d 415, 658 N.E.2d 192, 196 (1995) (admitting as present sense

impression 911 call by homeowner describing burglar's appearance and actions as he followed burglar out of the home); *Houston Oxygen Co. v. Davis*, 139 Tex. 1, 161 S.W.2d 474, 476 (1942) (admitting as present sense impression statement describing speed of car passing by). Hearsay statements of identification have been admitted under the exception for present sense impressions. *See, e.g., United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir.1995) (admitting as present sense impression 911 call describing that "my husband just pulled a gun out on me"), *vacated on other grounds by*, 516 U.S. 1168, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996); *United States v. Accetturo*, 966 F.2d 631, 633 n. 3 (11th Cir.1992) (admitting statement identifying extortionist made to airport authorities); *Delaplane*, 778 F.2d at 574 (allowing "Michael's back" as a present sense impression); *State v. Flesher*, 286 N.W.2d 215, 216–18 (Iowa 1979) (allowing as a present sense impression the decedent's statement, "It's Joan," as describing the arrival of her lover's wife).

In recognizing a hearsay exception for present sense impressions, however, we note that care must be taken to ensure that this exception is not used to admit statements that circumstances reveal were not truly spontaneous, but instead involved conscious reflection or recall from memory. The underlying rationale for the exception is that "[s]tatements of present sense impression are considered reliable because the immediacy eliminates the concern for lack of memory and precludes time for intentional deception." *United States v. Brewer*, 36 F.3d 266, 272 (2d Cir.1994) (quoting 4 LOUISELL, FEDERAL EVIDENCE § 438 (1980)).[8] Thus, the court must be "assure[d] ... that the

---

**8.** This is different from the rationale for admitting excited utterances, which relies on the state of excitement that stills reflective powers and makes fabrication unlikely. *See* FED. R. EVID. 803(1) & (2) advisory committee's note.

statements sought to be admitted were made spontaneously and contemporaneously with the events described." *People v. Brown*, 80 N.Y.2d 729, 594 N.Y.S.2d 696, 610 N.E.2d 369, 374 (1993). *See also, e.g., United States v. Parker*, 936 F.2d 950, 954 (7th Cir.1991) ("The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recognition or conscious fabrication.") (quoting *United States v. Blakey*, 607 F.2d 779, 785 (7th Cir.1979)); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 303 (3d Cir.1983) (exception for present sense impression founded on notion that contemporaneity of observation and impression protects against defective memory), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. Ltd., et al. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Booth v. State*, 306 Md. 313, 508 A.2d 976, 981 (1986) (discussing that the time interval between the observance and the utterance should be short). "With reflection[,] some reliability, which goes to the very essence of the present sense impression hearsay exception, is lost." *United States v. Hamilton*, 948 F.Supp. 635, 639 (W.D.Ky.1996).

We recognize there are varying approaches to the admission of statements under the exception for present sense impressions. Many jurisdictions admit present sense impressions without requiring additional safeguards to ensure reliability. *See, e.g., United States v. Ruiz*, 249 F.3d 643, 646–47 (7th Cir.2001) (noting that the federal rule does not condition admissibility on the availability of corroboration); *United States v. Medico*, 557 F.2d 309, 315 (2d Cir.1977) (finding that the "specific requirements" of Federal Rule 803(1) are satisfied without corroboration, although the trial court may consider the absence of corroboration when deciding if the state-ment would be better admitted under the federal residual exception); *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522, 528 (D.Md.1987) (recognizing corroboration is not required); *Warren v. State*, 774 A.2d 246, 252 (Del.2001) (corroboration is not a prerequisite for admission); *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387, 390 (1974) (verification is not a prerequisite to admissibility). Some of these jurisdictions, including neighboring Maryland, justify this approach by reasoning that the absence of corroboration bears upon the weight, and not the admissibility, of the statement. *See, e.g., Flesher*, 286 N.W.2d at 218; *Booth*, 508 A.2d at 984.

In contrast, a shrinking minority of jurisdictions requires corroboration before a hearsay statement will be admitted as a present sense impression. *See In re Japanese Elec. Prods.*, 723 F.2d at 303 (stating that the exception is generally understood to require some corroborating testimony); *Brown*, 594 N.Y.S.2d 696, 610 N.E.2d at 373 (holding that "spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence"); *see also People v. Vasquez*, 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328, 1335 (1996) (stating that "there must be some independent verification of the declarant's descriptions of the unfolding events"). The corroboration requirement is strictest in those jurisdictions demanding that an "equally percipient witness" testify to the existence of the event or condition described in the statement to be admitted. *See, e.g., Hewitt v. Grand Trunk W.R. Co.*, 123 Mich. App. 309, 333 N.W.2d 264, 267 (1983) (finding that hearsay statements regarding a train accident were not present sense impressions in part because the truth of the statements was not corroborated by a witness present at the scene); *Houston Oxy-*

*gen,* 161 S.W.2d at 476–77 (relying on the general rationale that the testifying witness has an equal opportunity to observe the event or condition described by the statement and hence to check for misstatements).

Other jurisdictions take a moderating approach that prevents the admission of statements when the absence of corroboration or other circumstances indicate a lack of trustworthiness. *See, e.g.,* CAL. EVID. CODE § 1241 (2002) (limiting present sense impressions to declarant's explanations of own conduct); FLA. STAT. ch. 90.803(1) (2002) (expressly precluding admissibility of statements satisfying the traditional requirements of a present sense impression when "made under circumstances that indicate [their] lack of trustworthiness"); MIN. STAT. § 801(d)(1)(2002) (requiring that declarant be available for cross-examination); OH R. EVID. 803(1) (Anderson 2003) (expressly excepting statements satisfying the traditional requirements of a present sense impression when "circumstances indicate lack of trustworthiness"); *Wal–Mart Stores v. Jenkins,* 739 So.2d 171, 171–72 (Fla.Dist. Ct.App.1999) (stating that the trial court "should weigh any corroborating evidence together with all other factors in making this determination") (quoting EHRHARDT, FLORIDA EVIDENCE § 803.1 (1999 Edition)); *State v. Case,* 100 N.M. 714, 676 P.2d 241, 245 (1984) (stating that trial court has broad discretion and may consider whether an absent declarant's observation could be verified by the witness who heard the declaration) (citing *State v. Perry,* 95 N.M. 179, 619 P.2d 855, 856 (Ct.App.1980)). We have adopted a similar approach in evaluating the reliability of excited utterances, where we consider the totality of the circumstances under which the hearsay statement was made. *See Malloy v. United States,* 797 A.2d 687,

690 (D.C.2002) (citing *United States v. Woodfolk,* 656 A.2d 1145, 1150 (D.C.1995)).

In light of our disposition, we do not finally resolve whether to adopt any particular safeguards for evaluating the admissibility of present sense impressions.

REID, Associate Judge, concurring:

■ Given the testimony of Mr. Kenneth Barrick and Ms. Danielle Gibson, I am convinced that under the circumstances of this case, even assuming trial court error (without deciding) concerning the admission of the statement attributed to Mr. Danny Lee, the error nevertheless was harmless, both under the non-constitutional standard in *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), assuming (without deciding) that it is applicable as the government argues, and the constitutional standard in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

While watching a closed circuit television and monitoring activity at the Lord & Taylor Department Store on January 13, 1998, Mr. Barrick, a loss prevention officer, saw Ms. Hallums remove two or three handbags from the sales rack at Lord & Taylor. Mr. Lee, a lead officer for the store, was with Mr. Barrick in the television monitoring room. He instructed Mr. Barrick to move to the area where Ms. Hallums had been seen. Since he did not see Ms. Hallums pay for the handbags before she left the store, Mr. Lee ordered Mr. Barrick to go after her. When Mr. Barrick spotted Ms. Hallums on the sidewalk, she had a large, "bulging" plastic shopping bag in her hand. Mr. Barrick observed that the woman before him was the same one he had seen a few moments earlier on the closed circuit television. Before he could apprehend her, Ms. Hallums got into a waiting van, but Mr. Barrick saw her clearly as she sat in the passenger

seat, and he confirmed that she was the same person he had seen removing the handbags from the sales rack in Lord & Taylor. During his testimony at Ms. Hallums' trial, Mr. Barrick made an in-court identification of her as the person who had removed $1,876.00 worth of handbags from the store without paying for them. He asserted that Ms. Haullums' "facial features stuck out to [him] and that's how [he] recognize[d] her from her face."

In addition to Mr. Barrick's testimony, Lord & Taylor's loss prevention manager, Ms. Gibson, identified Ms. Hallums after looking at the videotape in which Ms. Hallums was seen removing the handbags. Some three months earlier, on October 16, 1997, while monitoring the closed circuit television, Ms. Gibson saw Ms. Hallums in the store. On that same day, she went to a nearby store, Hechts, owned by the same entity that has the rights to Lord & Taylor. There, she watched Ms. Hallums for about 45 minutes. Ms. Gibson testified that the person she saw at Lord & Taylor and Hechts on October 16, 1997, and on January 13, 1998 at Lord & Taylor, were one and the same. Ms. Gibson was sure of her identification because by using the "zoom" feature on the surveillance camera, she was able to get a "clear view" of Ms. Hallum's face.

Based on the testimony of Mr. Barrick and Ms. Gibson, in my view, there can be no doubt that Ms. Hallums was the person seen lifting the handbags at Lord & Taylor on January 13, 1998. Indeed, the trial judge credited the testimony of Mr. Barrick and Ms. Gibson by saying, "I believe they are telling the truth about what they said." Moreover, it was abundantly clear to the trial judge that the person on the videotape was Ms. Hallums. As the trial judge put it, "you can see [Ms. Hallum's] face with relative clarity." Thus, under both *Kotteakos* (again assuming that it is applicable) and *Chapman, supra,* I conclude that even assuming trial court error (without deciding) in the admission of Mr. Lee's statement, the error was nevertheless both "clearly harmless" and harmless beyond a reasonable doubt.

GLICKMAN, Associate Judge, concurring:

I would hold that the trial judge did not err, constitutionally or otherwise, in admitting Officer Lee's identification of appellant.

Officer Lee was with Officer Barrick when they saw a woman enter Lord & Taylor and begin removing Coach handbags from a counter top display. According to Officer Barrick, Officer Lee "immediately" declared, "That's Theresa Hallums." In my view, Officer Lee's declaration was a statement of "present sense impression" as defined in Federal Rule of Evidence 803(1): "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The premise of this exception to the rule against hearsay is that "substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation."[1] The requirements of the exception and the conditions of its premise were satisfied here.[2] The triggering

1. FED. R. EVID. 803(1) & (2) advisory committee's note.

2. I would adopt the present sense impression exception as it is defined in the Federal Rules of Evidence (together with its implicit requirement of spontaneity, *see infra* ), without any of the supposed "safeguards" (corroboration requirements and the like) that Judge Ruiz's opinion for the court notes have been adopted in a few jurisdictions. See *ante* at 1278–79. For one thing, I doubt the utility of such additional requirements and I think that

event was the shoplifting, and the statement describing the shoplifter was made while it was happening. There is no reason to think that Officer Lee was making a deliberate or conscious misrepresentation. There is every reason to think he was speaking what he believed to be the truth. The present case is not distinguishable in principle from numerous other cases in which courts have held similar statements of identification to be admissible in evidence under the present sense impression exception. *See, e.g., United States v. Murillo,* 288 F.3d 1126, 1137 (9th Cir.2002) (upholding admission under Rule 803(1) of decedent victim's statement during telephone call that "I'm with Kiane and Rico"); *United States v. Accetturo,* 966 F.2d 631, 633–34 n. 3 (11th Cir.1992) (holding that where victim pointed to defendant and said to police, "That's Tony," the statement was admissible under Rule 803(1)); *United States v. Delaplane,* 778 F.2d 570, 574 (10th Cir.1985) (upholding admission of statement in a wiretapped telephone conversation that "Michael's back"); *United States v. Earley,* 657 F.2d 195, 198 (8th Cir.1981) (holding statement admissible where the declarant said, "That sounded just like Butch" immediately after receiving telephone call; "[t]he spontaneity of the statement in relation to the telephone call attests to its trustworthiness."); *see also Burgess v. United States,* 608 A.2d 733, 737–39 (D.C.1992) (Rogers, C.J., concurring) (concluding that where the victim of a shooting called his assailant "Tony," the victim's statement was admissible under the present sense impression exception of Rule 803(1)).

I agree that a present sense impression statement must be "spontaneous" as well as contemporaneous with the event being described. A statement that is scripted or planned in advance of the event would not qualify, nor would a statement that is the product of interrogation or deliberation following the event. Spontaneity is a question of fact. In this case the trial court could find that Officer Lee's statement was spontaneous based on Officer Barrick's uncontradicted testimony that Officer Lee identified the shoplifter as Theresa Hallums "immediately" upon seeing her. As the trial court's finding is supported by the evidence, we are not free to disregard it. *See* D.C.Code § 17–305(a) (2001).

The argument is made that Officer Lee's statement identifying the shoplifter as Theresa Hallums was not spontaneous, and hence was not a statement of present sense impression, because it was based on Lee's memory of Hallums from a previous encounter. This argument treats Officer Lee's personal knowledge of Hallums from past contact with her, the *sine qua non* for admitting his identification of her, as the essential basis for excluding that identification. But every valid identification depends on the declarant having a memory of past contact with the person identified. If appellant's argument were sound, it would mean—despite the abundant case law to the contrary—that no valid statement of identification could ever come within the exception for present sense impressions. Appellant's rationale also would mean that statements involving recollection, including statements of identification, could not satisfy the requirements of the closely related spontaneous declara-

the presence or absence of corroboration, for example, should go to the weight rather than to the admissibility of the evidence. For another thing, it seems to me that when a statute or other binding authority does not re-

quire otherwise, we should strive to align our rules of evidence with the Federal Rules. *See, e.g., Johnson v. United States,* 683 A.2d 1087, 1099–1100 (D.C.1996) (en banc).

tion (also known as "excited utterance") exception to the hearsay rule—a conclusion that has been rejected by more cases of this court than one can count. *See, e.g., Jones v. United States,* 829 A.2d 464, 466 (D.C.2003); *Lyons v. United States,* 683 A.2d 1080, 1082–83 (D.C.1996); *Smith v. United States,* 666 A.2d 1216, 1222–23 (D.C.1995); *Young v. United States,* 391 A.2d 248, 250 (D.C.1978), all cases in which the court upheld the admission as spontaneous declarations of statements in which assault victims identified the persons who had attacked them.

I think that appellant's argument is not sound, however, because it is based on a false dichotomy. Spontaneity and recollection are not opposites. It is a mistake to think that one can restrict the present sense impression exception to statements in which memory plays no role.[3] Indeed, I doubt there is such a thing as a statement of pure perception that is completely unaided or uninfluenced by the declarant's memory. While statements about *past* events are not admissible under Rule 803(1), that Rule does not require that statements of *present* perception be divorced from memory; if it did, the exception would be limited by its terms to pure descriptions and would not encompass as well statements "explaining" an event or condition. Consider, for example, a sports announcer reporting a baseball game as it unfolds. Imagine hearing the announcer say something like this: "Barry Bonds swings at a high fastball, it's going, it's into the right field stands, it's his seventieth home run on the season!" That statement relies in part on the announcer's memory.

It is also a statement of present sense impression *par excellence.*

Thus, I am not persuaded by the argument that Officer Lee's statement "That's Theresa Hallums" is equivalent to the typical identification made by a witness to a crime at a subsequent viewing of a suspect. *Ante* at 1273, 1274. When a witness views a photographic array or a lineup, for example, and identifies a suspect as the perpetrator of the crime, the witness's statement is about a past event, the commission of the crime. The statement does not fall within the exception for present sense impressions because it is not made contemporaneously with the event being described or explained. In contrast, Officer Lee's statement "That's Theresa Hallums" was not a statement about a past event. It said nothing about what happened when Officer Lee previously confronted Theresa Hallums. Rather, the statement "That's Theresa Hallums" was purely about the event transpiring as the words were spoken. The event and the statement describing it were contemporaneous, as the present sense impression exception requires.

Finally, I do not agree that the admission of Officer Lee's statement violated appellant's Sixth Amendment right to confront the witnesses against her. It is settled that the Confrontation Clause allows the admission against a criminal defendant of out-of-court statements that fall within what the Supreme Court has called "firmly rooted" exceptions to the hearsay rule. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[4] "Firmly

---

**3.** Thus, I am constrained to demur to the statement in Judge Ruiz's opinion for the court that "care must be taken to ensure that this exception is not used to admit statements that circumstances reveal were not truly spontaneous, but instead involved conscious reflection or recall from memory." *Ante* at 1277.

**4.** The opinion of Justice Stevens for a four-Justice plurality in *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), summarizes the "firmly rooted" doctrine:

rooted" exceptions "carry sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause." *White v. Illinois*, 502 U.S. 346, 355–56 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

The Supreme Court has not had occasion to decide whether the present sense impression exception is a "firmly rooted" one for Sixth Amendment purposes. In *White*, however, the Court had "no doubt" that the hearsay exceptions for spontaneous declarations and statements made for medical treatment are "firmly rooted" given their age, widespread acceptance in the States, and incorporation in the Federal Rules of Evidence. *Id.* at 355–56 n. 8, 112 S.Ct. 736; *see also Lilly*, 527 U.S. at 126, 119 S.Ct. 1887. "[S]uch out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness." *White*, 502 U.S. at 355, 112 S.Ct. 736.

If the spontaneous declaration exception is "firmly rooted," I think we must agree that the present sense impression exception is as well. The two exceptions share nearly identical genealogy and genes; they are two peas from the same pod. *See*

*Burgess*, 608 A.2d at 738 (Rogers, C.J., concurring) (explaining that the excited utterance and present sense impression exceptions have a common origin in "the ancient term *res gestae*" and "are founded on the same policy"). Like the spontaneous declaration exception, "[t]he present sense impression exception to the hearsay rule is well rooted in our common law." *Id.*; *accord, Brown v. Keane*, 229 F.Supp.2d 298, 308 (S.D.N.Y.2002), *vacated on other grounds*, 355 F.3d 82 (2nd Cir. 2004) ("Cases applying the *res gestae* doctrine to admit present sense impressions date back at least as early as 1897."); *Clark v. Commonwealth*, 14 Va.App. 1068, 421 S.E.2d 28, 30 (1992) (tracing recognition of present sense impression exception in Virginia back to 1877). Also like the spontaneous declaration exception, the present sense impression exception has been adopted in the Federal Rules of Evidence and "by at least four-fifths of the states." *Brown*, 229 F.Supp.2d at 309. Most important, present sense impression statements have comparable—if not stronger—indicia of reliability, beginning with the "degree of spontaneity which is the foundation of their trustworthiness." *Burgess*, 608 A.2d at 738.[5] "There is no

---

We now describe a hearsay exception as "firmly rooted" if, in light of "longstanding judicial and legislative experience," *Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), it "rests [on] such [a] solid foundation that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.'" *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531 (quoting *Mattox [v. United States*, 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895)]). This standard is designed to allow the introduction of statements falling within a category of hearsay whose conditions have proven over time "to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath" and cross-examination at a trial. *Mattox*, 156 U.S. at 244, 15 S.Ct. 337.

*Lilly*, 527 U.S. at 126, 119 S.Ct. 1887.

5. "Furthermore," as Chief Judge Rogers added in *Burgess*, "statements admitted under present sense impression possess other indicia of reliability besides spontaneity .... Statements concerning events that the declarant is observing at the time he or she makes the declaration have the advantage of contemporaneity of the event and statement .... Also, because the statement is made contemporaneously with the observation there is little room for fabrication .... Nor does the exception suffer from the perceived deficiencies of the excited utterance exception in the sense that statements made in a state of excitement may impair the accuracy of observation." *Id.* (citations omitted).

principled basis," *id.,* to treat the present sense impression exception differently from the spontaneous declaration exception for purposes ' of the Confrontation Clause. Virtually every court that has addressed the issue agrees and has found the present sense impression exception to be "firmly rooted." [6]

Accordingly, I would affirm appellant's conviction on the grounds that Officer Lee's out-of-court identification of her was admissible under the present sense impression exception to the hearsay rule, and that its admission did not violate appellant's rights under the Confrontation Clause.

RUIZ, Associate Judge, dissenting:

I conclude that even if the identification at issue in this case came within the exception for present sense impressions—a close issue I do not decide—the statement was admitted in violation of the Confrontation Clause, and the error was not harmless beyond a reasonable doubt. Therefore, I would reverse appellant's conviction and remand for a new trial.

### I. Identifications.

We are dealing here with the admission of a hearsay identification without the declarant available for cross-examination. Statements of identification are more likely than other statements describing an observed event to contain assertions based upon are collection from memory, and if so, would lack the trustworthiness bom of spontaneity for which statements of present sense impression are deemed reliable.

The most obvious examples are statements identifying a person at a lineup or from an array, where even though the declarant is responding to an unfolding event, the statement is not a description of the event, but a recognition of a person presently being seen based on recollecting a prior occurrence. *See United States v. Brewer,* 36 F.3d 266, 271–72 (2d Cir.1994) ("The essence of an identification such as at a photo array or a lineup ... is a comparison between what the witness is contemporaneously viewing and the witness' recollection of a prior event ...."); *United States v. Hamilton,* 948 F.Supp. 635, 639 (W.D.Ky.1996) ("[A] photographic identification involves an intervening step that required [the declarant] to reflect back to what she saw that night and perhaps other occasions ...."); *Edwards v. State,* 736 So.2d 475, 478–79 (Miss.Ct.App. 1999) (reasoning that witness's identification of individual seen running near scene shortly after murder was not admissible under present sense impression exception where identification was given in response to question from police officer). To be admissible, these types of identifications must comply with the requirements of D.C. CODE § 14–102(b)(3) (2001), or come under some other exception to the hearsay rule. They are not, however, present sense impressions. In this regard, it makes no difference whether the statement was made in response to observing a person at a show-up, through a mirror in a line-up, from a photo array, or as in this case, from a live video monitor. Those are merely the mechanics that allow the

**6.** *See Gutierrez v. McGinnis,* 2003 WL 21782628, at*7, 2003 U.S. Dist LEXIS 13333 at *13 (S.D.N.Y.2003); *Brown,* 229 F.Supp.2d at 309–10; *Reedus v. Stegall,* 197 F.Supp.2d 767, 777 (E.D.Mich.2001), *aff'd on other grounds,* 79 Fed. Appx. 93 (6th Cir.2003); *Brown v. Tard,* 552 F.Supp. 1341, 1351 (D.N.J.1982); *State v. Wooten,* 193 Ariz. 357,

972 P.2d 993, 1002 (App.1998); *Green v. St. Francis Hosp., Inc.,* 791 A.2d 731, 736 (Del. 2002); *State v. Brown,* 618 So.2d 629, 633–34 (La.App.1993); *People v. Hendrickson,* 459 Mich. 229, 586 N.W.2d 906, 910 (1998); *State v. Pickens,* 346 N.C. 628, 488 S.E.2d 162, 171 (1997).

observer to perceive. What matters is whether a statement's spontaneous, almost reflexive character, qualifies it as a present sense impression because it is describing a current event, rather than recollecting a previous experience.

Even though they may be contemporaneous with an observed event, some statements of identification—particularly those of strangers [1]—may in fact be recollections from memory identifying a person from a previous encounter. Such identifications, to the extent that they require reflection and recall from memory, are not spontaneous and thus more likely to be unreliable. They are not admissible as present sense impressions. *See People v. Kello,* 96 N.Y.2d 740, 723 N.Y.S.2d 111, 746 N.E.2d 166, 167–68 (2001) (holding that statement of identification was not present sense impression where declarant had 2½ hours "time for reflection" between observation of the crime in progress and subsequent identification to police as he was observing the perpetrator from his window); *Hamilton,* 948 F.Supp. at 639 (holding it was error to admit a photographic identification as a present sense impression because it required declarant to "reflect back" to an undercover buy ten minutes earlier).

I focus on hearsay statements of identification, not only because some identifications might not be true present sense impressions, but also because of their potential for serious prejudice if improperly admitted. An out-of-court identification of the defendant as the perpetrator of a crime can be powerful evidence with a jury, highlighting the importance of ensuring the statement's reliability before dispensing with the constitutional right to

confront and cross-examine to uncover weaknesses in the identifier's ability to perceive or biases that may have led to misidentification. *See generally United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (stating that the "annals of criminal law are rife with instances of mistaken identification") (citations omitted); *Wehrle v. Brooks,* 269 F.Supp. 785, 792 (W.D.N.C. 1966) ("Positive identification of a person not previously known to the witness is perhaps the most fearful testimony known to the law of evidence."); *In re L.G.T.,* 735 A.2d 957, 962 (D.C.1999) (Schwelb, J., concurring) ("This court and other courts have repeatedly recognized the unreliability of identifications of strangers made on the basis of brief observation under stressful conditions.") (citations omitted)). Recognizing the constitutional implications and impact of out-of-court identifications, Federal Rule of Evidence 801(d)(1)(C) and D.C.Code § 14–102(b)(3) permit out-of-court identifications, but only on the condition that the declarant have first-hand knowledge, testify as a witness in court, and be available for cross-examination. Therefore, although hearsay statements of identification can be admissible as present sense impressions, their admission requires particular scrutiny.

Lee's out of court statement, "[t]hat's Theresa Hallums," occurred as he was observing a woman shoplifting on the video monitor, and seems, at first blush, to be a present sense impression. Barrick's testimony makes clear, however, that Lee identified the woman as Theresa Hallums be-

---

1. Hearsay statements that identify close relatives and friends are more likely to be truly spontaneous as they would not require reflection and memory to the same extent as identifications of strangers. We have noted the reliability of these identifications in other con-

texts. *See, e.g., Black v. United States,* 755 A.2d 1005, 1008–09 (D.C.2000)(noting the reliability of the identification because identifier knew appellant); *Washington v. United States,* 689 A.2d 568, 572–73 (D.C.1997) (same).

cause he remembered her from a prior encounter. As Barrick explained three times, Lee reported that he recognized the woman he was observing on the monitor as someone he had previously seen stealing handbags and thus was able to identify her from that previous occasion.[2] According to appellant, Lee's statement, "[t]hat's Theresa Hallums," is the equivalent of saying, "I recognize the woman I now am seeing on the monitor as the same woman I previously saw steal handbags three months ago at a different store, a woman whose name is Theresa Hallums."[3] Thus, appellant argues, Lee's identification was not spontaneous and devoid of reflection, but involved an intervening step that required him to reflect back to what he saw on a "previous occasion." Cf. Young v. United States, 391 A.2d 248, 250 (D.C. 1978) (noting that the decisive factor in allowing a spontaneous utterance is "whether the circumstances reasonably justify the conclusion that the remarks were not made under the impetus of re-

flection") (citation omitted). "If the statement involves the declarant's memory, it fails to qualify under this exception." 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 271 n. 22 (5th ed.1999). The government contends, on the other hand, that Lee's identification was a spontaneous description of what he was observing on the monitor and, therefore, admissible as a present sense impression. I do not decide this close issue[4] because, as I now turn to discuss, even if Lee's identification is a present sense impression, its admission would violate the Sixth Amendment.

## II. Confrontation Clause

Appellant challenges the admission of Lee's out-of-court identification not only as an evidentiary matter, but also as a violation of her constitutional right to cross-examine witnesses under the Confrontation Clause of the Sixth Amendment.[5] The Supreme Court has established a link

2. When first asked about Lee's identification of appellant, Barrick testified that Lee said, "that's the lady that hit the Coach handbags on a previous occasion." When asked a second time, Barrick again testified that "[Lee] stated that he recognized her from a previous [occasion]." Yet a third time, Barrick testified that Lee identified the woman he saw on the monitor as "Theresa Hallums, the woman that hits for handbags."

3. Although the trial court excluded (as other crimes evidence) Barrick's testimony that Lee recognized appellant from a previous shoplifting incident, it provides important context for the purpose of understanding the immediacy with which Lee was able to identify her. See FED. R. EVID. 803(1) & (2) advisory committee's note ("If the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement.").

That the declarant knows the person's name does not make a difference unless it sheds light on the declarant's ability to identify the person without need to search his or her memory, e.g., because the person is

known to the declarant. Similarly, an out-of-court identification from a line-up or photo array does not become admissible without the declarant available as required by D.C.Code § 14-102(b)(3), simply because the declarant knows the name of the person identified.

4. Whether a particular statement comes within the hearsay exception for present sense impressions is a legal question that we review de novo. Cf. Doret v. United States, 765 A.2d 47, 62 (D.C.2000) (noting that whether a statement is against the declarant's penal interest is a legal question), cert. denied, 532 U.S. 1030, 121 S.Ct. 1980, 149 L.Ed.2d 772 (2001). This question may involve findings of fact, to which we defer if supported by substantial evidence. See Sanders v. United States, 751 A.2d 952, 954 (D.C.2000) (citations omitted).

5. Our review of the record supports the conclusion that the objection to admission of Lee's identification was made on constitutional grounds and that the trial court recognized it as such.

between evidentiary law and the constitutional right to confront one's accusers such that the admission of out-of-court statements that bear "adequate indicia of reliability" do not violate the right to confrontation if the declarant is not available for cross-examination. *See Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (citing *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)).[6] The required reliability can be met if the hearsay statement comes within a "firmly rooted" exception to the hearsay rule or otherwise bears "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. 2531. Therefore, even if Lee's identification is admissible as a present sense impression, we would also have to conclude either that the exception for present sense impressions is firmly rooted or that Lee's statement bore "particularized guarantees of trustworthiness." I can do neither.

The question of whether the present sense impression is firmly rooted, which has not been decided by the Supreme Court or any federal appellate court, is not free from doubt. *See United States v. Murillo,* 288 F.3d 1126, 1137 (9th Cir. 2002). Although a majority of jurisdictions—but by no means all—has adopted the exception, the present sense impression is of fairly recent vintage in its present form, having gained an important foothold with its inclusion in 1975 in the Federal Rules of Evidence. It is no happenstance that it is not until today that we have adopted it. In contrast, exceptions that have been found to be firmly rooted, such as the exception for excited

utterances and co-conspirator's statements, are hundreds of years old. *See White v. Illinois,* 502 U.S. 346, 355 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (excited utterances); *Bourjaily v. United States,* 483 U.S. 171, 185, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (statements of co-conspirators). In addition, even though present sense impressions form part of the group of exceptions categorized as *res gestae*—one of which, excited utterances, the Supreme Court has determined to be firmly rooted, *see White,* 502 U.S. at 355 n. 5, 112 S.Ct. 736—present sense impressions have not been generally so recognized. This might be attributable to the fact that although the term "present sense impression" is generically used across the country, the evaluation of hearsay statements for admissibility under the exception' as set out in my opinion for the court adopting the exception, is not uniform and depends on consideration of a variety of factors that can differ from jurisdiction to jurisdiction. The determination that a hearsay exception is firmly rooted operates as a substitute for the constitutional right to cross-examination "because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of statements." *Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In light of the various forms in which it has been adopted during a relatively brief history in the legal landscape, the present sense impression does not have the necessary stamp of longstanding acceptance to accord it the special status of a firmly rooted exception that can serve

---

6. *But see State v. Crawford,* 147 Wash.2d 424, 54 P.3d 656 (2002), *cert. granted,* —— U.S. ——, 123 S.Ct. 2275, 156 L.Ed.2d 129 (2003), in which petitioner asks the Supreme Court to overturn *Ohio v. Roberts* and hold that the Confrontation Clause establishes a bright-line procedural requirement that prohibits hear-

say testimonial evidence without regard to its reliability. There is a question whether the hearsay statement at issue in this case, which was made by a security officer in the course of his duties, would come within the category of statements at issue in *Crawford.*

as a substitute for the right of cross-examination ensconced in the Confrontation Clause. *But see Brown v. Keane,* 229 F.Supp.2d 298, 304–10 (S.D.N.Y.2002) (reviewing cases and concluding, "albeit not without hesitation," that present sense impression exception is firmly rooted).

Nor does Lee's out-of-court identification bear such particularized guarantees of trustworthiness that cross-examination "would add little to its reliability." *Idaho v. Wright,* 497 U.S. at 821, 110 S.Ct. 3139. To the contrary, there are many questions raised by Lee's statement which go to the reliability of his identification of Theresa Hallums as the shoplifter he saw on the monitor. For example, when Lee identified the shoplifter as Theresa Hallums, his statement implied that he recognized her from a previous occasion. But what occasion, how long ago, and under what circumstances? These questions would normally be asked of a person who makes an identification based on memory. In this case, however, we do not know from Lee— the only person with first-hand information about his ability to observe Ms. Hallums on the previous occasion to which he alluded in his out-of-court statement. At most there is the rather obscure testimony of Danielle Gibson, and even there, we can only assume that the incident she vaguely described is the same one on which Lee relied to identify Hallums. See notes 1 and 2 of my opinion for the court, *ante.* We also do not know about the accuracy of Lee's recollection, which, as far as one can tell from Gibson's testimony, was likely three months old when he saw her on the video monitor. These are questions that are left unanswered unless the jury had an opportunity to evaluate Lee's responses to cross-examination and to see his demeanor while on the stand. Nor could the jury assess his credibility and motive, a question that might occur to some jurors about a security officer, if he were to be perceived upon being cross-examined on the stand as being over-zealous or anxious to nab and identify a shoplifter. The jury simply had no first-hand basis to evaluate the credibility of Lee's identification.[7] Finally, even absent any deliberate or unconscious bias, an important purpose of cross-examination is to force an honest witness to consider and nuance in-court testimony when confronted with a matter as serious as an identification that could lead to conviction in a criminal prosecution. That factor is absent when the identification is made informally, as here, to a colleague within the confines of a work setting. Under these circumstances, I conclude that Lee's statement lacked the particularized guarantees of reliability that can supplant cross-examination.

### III. Harm

The conclusion that the trial court erred in admitting Lee's identification does not conclude the inquiry, however, as we must "determine whether any such error committed is of constitutional dimension—*i.e.,* whether the trial court has permitted sufficient cross-examination to comport with the requirements of the Sixth Amendment right to confrontation." *Jenkins v. United States,* 617 A.2d 529, 532 (D.C.1992) (quoting *Springer v. United States,* 388 A.2d 846, 856 (D.C.1978)). When the trial court's evidentiary ruling deprives the defendant of any opportunity to cross-examine a witness or present evidence concerning a central issue in the case, we will affirm only if we are convinced that the error was harmless beyond a reasonable doubt, applying the test set forth in *Chap-*

---

7. Although defense counsel suggest could in closing argument doubts about Lee's identification, a jury instructed that arguments of counsel are not evidence is likely to give more weight to the trial court's admission over objection of an out-of-court identification.

*man v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Clark v. United States*, 639 A.2d 76, 81 (D.C.1993) (adopting *Chapman*). Under that test, it must be clear beyond a reasonable doubt (1) that the defendant would have been convicted without the witness's testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness's testimony. *See Scull v. United States*, 564 A.2d 1161, 1166 (D.C. 1989) (quotation omitted).

Because appellant did not have the opportunity to cross-examine a witness upon which the verdict relied for a central issue in the case—the identity of the shoplifter—it must be analyzed under *Chapman*. *See* 386 U.S. at 24, 87 S.Ct. 824. Lee's out-of-court identification of appellant was one of three underlying the trial court's decision to convict appellant. I cannot say that it is clear beyond a reasonable doubt that appellant would have been convicted without Lee's identification, or that cross-examining Lee would not have weakened the impact of his identification on the trial court's verdict. At the outset of his ruling, the trial judge stated that: "The case is close and in the course of thinking about it, posed considerable difficulty to me, perhaps because I wasn't thinking as clearly as I should be. But, also because I think the case is difficult to decide." He added that although the government's evidence is "far from overwhelming" in the "aggregate" it passes muster based on "three things": the identifications of Gibson, Barrick and Lee. The trial judge thought that Barrick and Gibson were not biased and "were telling the truth" of what they believed, but that there remained the question of what weight to give their testimony. With respect to Lee's identification, the trial judge recognized that he had initially said that "if it ended up mattering much, I might not pay much attention to it,"[8] but immediately added "that was a statement that I take back" and went on to say that the government was entitled to use Lee's identification as substantive evidence and that it was appropriate to admit Lee's identification of Ms. Hallums. Two days earlier during closing arguments the trial judge referred to Lee's identification as "an important piece of evidence." The prosecutor thought as much, and during closing argued to the trial judge that there were a "series of identifications" and expressly referred to Lee's hearsay statement.

The trial judge's view that the government's case was far from overwhelming is borne out by the record because the objective accuracy of all the identifications was subject to question. Barrick, who observed the thief on the monitor and then, for a few seconds in person (but from a distance) when he saw her enter a waiting van outside the store, did not identify Hallums as the perpetrator until trial seven months later. Gibson saw the shoplifter only on the videotape and it was not until trial that she identified appellant as the person on the videotape and the same person she had observed at Hecht's three months before the charged shoplifting incident at Lord & Taylor. Earlier I set out the questions raised (and left unanswered) by admission of Lee's hearsay identification concerning the basis for his identification of Theresa Hallums. In light of the weakness of the government's case, I cannot say the error of admitting and relying on Lee's identification was harmless be-

8. Earlier in the proceeding, the trial judge had commented, "if this case ends up hinging on some person who is not here looking at a screen and saying, 'Theresa Hallums,' it's not going to be worth very much."

yond a reasonable doubt. Therefore, I would reverse.